UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TEKDOC SERVICES, LLC | : | |
| LOU ANN NAPLES | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NUMBER: |
| | : | |
| 3i-INFOTECH, INC. | : | |
| Defendant. | : | |
| | : | April 11, 2008 |

## PETITION FOR REMOVAL

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT:

Defendant, 3i-Infotech, Inc., respectfully states:

1.     On March 25, 2008, Plaintiffs served by personal service upon Defendant's registered agent for service of process a Summons and Complaint for an action against the Defendant in the Superior Court for the Judicial District of Hartford, in the State of Connecticut, which is entitled <u>Tekdoc Services, LLC and Lou Ann Naples v. 3i-Infotech, Inc.</u>, Superior Court Docket No.: HHD-CV-08-5018661-S. No further proceedings have been had in the instant action. Copies of all process, pleadings and orders served upon the Defendant in said action are annexed hereto as Exhibit A.

2.     The above-described action is one over which this court has original jurisdiction under the provisions of 28 U.S.C. § 1332, diversity of citizenship.

3.      Plaintiff Lou Ann Naples, an individual, is a resident of the State of Connecticut.

4.      Plaintiff Tekdoc Services, LLC, is a Connecticut Limited Liability Company, with its principal place of business located in Old Saybrook, Connecticut.

5.      Defendant is incorporated in the state of Delaware, with its principal place of business located in New Jersey.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      Defendant, 3i-Infotech, Inc., received the initial pleading setting forth the claim for relief upon which the State Action is based on March 25, 2008.  Therefore, this Petition for Removal is filed with this Court within thirty (30) days after the earlier of these dates of such receipt, as calculated under Rule 6 of the Federal Rules of Civil Procedure.

WHEREFORE, Defendant prays that the above action, commenced in the Superior Court, State of Connecticut, in the Judicial District of Hartford, be removed to this Court.

DEFENDANT,
3i-INFOTECH, INC.

By:  _____

Edward M. Richters (ct 08043)
Jackson Lewis LLP
90 State House Square, 8th Floor
Hartford, CT  06103
Tel. (860) 522-0404
Fax (860) 247-1330
richtere@jacksonlewis.com

<u>CERTIFICATION OF SERVICE</u>

This is to certify that a copy of the foregoing was sent by certified mail, postage

prepaid, on this 11th day of April 2008, to all counsel of record as follows:

> Vincent F. Sabatini, Esq.
> Sabatini & Associates, LLC
> One Market Square
> Newington, CT 06111

> **Certified Mail No.  7005 1160 0002 9417 9774**

> Edward M. Richters

# EXHIBIT A

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
03/25/2008
CT Log Number 513232127

**TO:**   Bala Venkataraman
3i Infotech, Inc.
450 Raritan Center Parkway
Edison, NJ 08837-3944

**RE:**   **Process Served in Connecticut**

**FOR:**   3i Infotech, Inc. (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Tekdoc Services, LLC and Lou Ann Naples, Pltfs. vs. 3i-Infotech, Inc., Dft. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Statement, Exhibit |
| **COURT/AGENCY:** | Hartford at Hartford Superior Court Judicial District, CT Case # None Specified |
| **NATURE OF ACTION:** | Monies Due and Owing - Services Rendered - Violation of Connecticut Unfair Trade Practices |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Hartford, CT |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/25/2008 at 11:54 |
| **APPEARANCE OR ANSWER DUE:** | 04/15/2008 - summons // on or before the second day after the Return Date - file an appearance form |
| **ATTORNEY(S) / SENDER(S):** | Vincent F. Sabatini, Esquire Sabatini and Associates, LLC One Market Square Newington, CT 06111 860-667-0839 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 791028874526 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Gary Scappini |
| **ADDRESS:** | One Corporate Center Floor 11 Hartford, CT 06103-3220 |
| **TELEPHONE:** | 860-724-9044 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**SUMMONS - CIVIL**
(Except Family Actions)
JD-CV-1  Rev. 1-2000
C.G.S. § 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P B  Secs 3-1 thru 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www jud ct gov*

**"X" ONE OF THE FOLLOWING:**
*Amount, legal interest or property in
demand, exclusive of interest and
costs is:*

- [ ] less than $2,500
- [ ] $2,500 through $14,999 99
- [X] $15,000 or more

*("X" if applicable)*
- [ ] *Claiming other relief in
addition to or in lieu of money
or damages.*

**INSTRUCTIONS**
1. Type or print legibly; sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint  Also, if
   there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 8-1
   for other exceptions

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are  hereby
commanded to make due and legal service of this Summons and attached Complaint

**RETURN DATE** *(Mo., day. yr.)*
*(Must be a Tuesday)* 4-15-08

| | | | AT *(Town in which writ is returnable) (C G S  51-346, 51-349)* | CASE TYPE *(See  JD-CV-1c)* |
|---|---|---|---|---|
| [X] | JUDICIAL DISTRICT | | Hartford | Major : **C**   Minor **90** |
| [ ] | HOUSING SESSION | [ ] G.A. NO. | | |

ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED *(No. street, town and zip code) (C G S  51-346, 51-350)* | TELEPHONE NO. *(with area code)*
95 Washington Street; Hartford, CT 06106 | 860-548-2700

| PARTIES | NAME AND ADDRESS OF EACH PARTY      *NOTE: Individuals' Names:* <br> *(No., street, town and zip code)      Last, First, Middle Initial* | [ ] Form JD-CV-2 attached | PTY NO. |
|---|---|---|---|
| **FIRST NAMED PLAINTIFF** | TEKDOC SERVICES, LLC; 21 Seacrest Road; Old Saybrook, CT 06475 | | 01 |
| Additional Plaintiff | NAPLES, Lou Ann; 21 Seacrest Road; Old Saybrook, CT 06475 | | 02 |
| **FIRST NAMED DEFENDANT** | 3I-INFOTECH, INC.; 76 Batterson Park Road; Farmington, CT 06032 <br> Agent: CT Corporation System; One Corporate Center; Floor 11; Hartford, CT 06103-3220 | | 50 |
| Additional Defendant | | | 51 |
| Additional Defendant | | | 52 |
| Additional Defendant | | | 53 |

**NOTICE TO EACH DEFENDANT**

1. YOU ARE BEING SUED.
2. This paper is a Summons in a lawsuit
3. The Complaint attached to these papers states the claims that
   each Plaintiff is making against you in this lawsuit
4. To respond to this Summons, or to be informed of further proceedings,
   you or your attorney must file a form called an "Appearance" with the
   Clerk of the above-named Court at the above Court address on or before
   the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time,
   a judgment may be entered against you by default.

6. The "Appearance" form may be obtained at the above
   Court address.
7. If you believe that you have insurance that may cover the
   claim that is being made against you in this lawsuit, you
   should immediately take the Summons and Complaint to
   your insurance representative
8. If you have questions about the Summons and Complaint,
   you should consult an attorney promptly. The Clerk of
   Court is not permitted to give advice on legal questions.

| DATE <br> 3-18-08 | SIGNED *(Sign and "X" proper box)* | [X] Comm of Superior Court <br> [ ] Assistant Clerk | TYPE IN NAME OF PERSON SIGNING AT LEFT <br> Vincent F. Sabatini, Esquire |
|---|---|---|---|

**FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:**

| NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE *(No., street, town and zip code)* | TELEPHONE NUMBER | JURIS NO. *(If atty. or law firm)* |
|---|---|---|
| Sabatini and Associates, LLC; One Market Square; Newington, CT 06111 | 860-667-0839 | 052654 |

| NAME AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 *(No. street. town and zip code)* | SIGNATURE OF PLAINTIFF IF PRO SE |
|---|---|
| Susan Melluzzo; 93 Foxon Place; New Britain, CT 06053 | |

| # PLFS | # DEFS | # CNTS | SIGNED *(Official taking recognizance); "X" proper box)* | [X] Comm of Superior Court <br> [ ] Assistant Clerk | For Court Use Only |
|---|---|---|---|---|---|
| 2 | 1 | 8 | | | FILE DATE |

IF THIS SUMMONS IS SIGNED BY A CLERK:
a  The signing has been done so that the Plaintiff(s) will not be denied access to the courts
b  It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law
c  The Clerk is not permitted to give any legal advice in connection with any lawsuit
d  The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any
   errors or omissions in the Summons. any allegations contained in the Complaint. or the service thereof

A TRUE COPY
ATTEST

STATE MARSHAL

| I hereby certify I have read <br> and understand the above: | SIGNED *(Pro Se Plaintiff)* | DATE SIGNED | DOCKET NO. |
|---|---|---|---|

**ORIGINAL**

RETURN DAY: APRIL 15, 2008

| | | |
|---|---|---|
| **TEKDOC SERVICES, LLC** | : | **SUPERIOR COURT** |
| **LOU ANN NAPLES** | : | |
| | : | |
| **V.** | : | **HARTFORD JUDICIAL** |
| | : | **DISTRICT** |
| | : | |
| | : | |
| **3i-INFOTECH, INC.** | : | **MARCH 18, 2008** |

**COMPLAINT**

**FIRST COUNT – BREACH OF CONTRACT**

      1.     TekDoc Services, LLC is a Connecticut Limited Liability Company with a principal place of business located in Connecticut. (Hereinafter referred to as "plaintiff")

      2.     Defendant 3i-Infotech, Inc. (formerly Innovative Business Solutions, Inc./IBSI) (Hereinafter referred to as "3i") is a corporation with a corporate headquarters in India, a United States headquarters in New Jersey and has an office in Farmington, CT.

      3.     Plaintiff and 3i entered into an agreement. (See Agreement attached hereto as Ex. 1). The agreement referred to as "SOFTWARE SERVICES AGREEMENT" was executed by the parties or their representatives on January 20, 2005. (Hereafter referred to as "the agreement").

      4     The agreement formed the basis for the relationship between plaintiff and 3i.

      5.     3i had an agreement with a company called "Ranbaxy Inc. (Herein referred to as 'Master Services Agreement"). Under this agreement 3i placed entities it contracted with, companies such as plaintiff and/or individuals such as plaintiff's personnel, sometimes referred to by 3i as "consultants". At all times relevant 3i knew

Ranbaxy's business, knew its personnel requirements, knew that it had operations in
India and knew that there was a reasonable expectation that plaintiff's personnel would
go to India. The basis of the relationship 3i had with Ranbaxy was that plaintiff's
personnel, in this case Lou Ann Naples, (Hereinafter referred to as "Naples") was to be
placed on a temporary-to-permanent/contract-to-hire basis. Naples was to act as a
Validation Manager on all validation projects within Ranbaxy's Information Technology
department, including a drug safety implementation project known as the
"Pharmacovigilance Project", "Argus Global Rollout", and/or "Argus Rollout" (referred
to as "Argus.").

      6.     Plaintiff relied on representations made by 3i, which included payment for
services of plaintiff's personnel at the rate of $85.00 to 87.00 per hour; a promise of a
permanent position with an annual salary of approximately $132,000.00, plus fringe
benefits to include vacation, health, retirement, education/training, and relocation
expenses/allowances and treatment of plaintiff's personnel in the same manner as
Ranbaxy would treat its own employees.

      7.     When plaintiff took on the assignment it did so relying in part on the
payment for its services, promise for a permanent position and expectations to be treated
as employees in similarly situated position as a Validation Manager for Ranbaxy.

      8.     3i did place Naples at Ranbaxy.

      9.     After working at Ranbaxy for nine (9) months, Naples was requested to go
to India to work with other Ranbaxy employees.  This was a project that Ranbaxy had
committed to complete for the U.S. Food and Drug Administration by December 2005.

10.    In an effort to fulfill the contract plaintiff had with 3i, plaintiff accepted the assignment with the expectation plaintiff's personnel would be treated in the same manner as Ranbaxy employees.

11.    3i, its agents, servants and/or employees breached its agreement with plaintiff in one or more of the following ways:

a.    It knew or should have known about the dangerous conditions in India but it failed to inform the plaintiff;

b    It failed to pay plaintiff the sums earned while under contract;

c.    It failed to provide permanent employment;

d.    It failed to provide that plaintiff's personnel would have safe, reasonable living and sanitary accommodations;

e.    It failed to warn plaintiff and its personnel that the city plaintiff's personnel was assigned to was under a terrorist attack which occurred in the shopping district during Diwali, the Hindu festival of lights, and involved several fatalities upon her arrival in India and during a high security alert;

f.    It failed to provide that plaintiff's personnel would be met at the airport in India and leave plaintiff's personnel unattended at the airport upon arrival when it knew or should have known that a high security alert existed;

g.    It failed to ensure, inform and/or properly provide for plaintiff's personnel to be housed in a proper housing facility;

h.    It failed to ensure and/or provide for plaintiff's personnel to live in the same type of facilities as male counterparts and that it failed to inform plaintiff that its personnel would have to reside in a "rooming house" without heat and hot water and

which was infested with mosquitoes, bed bugs, and other insects and reptiles without proper sanitary facilities such as toilet paper, towels and blankets;

     i.     It failed to inform plaintiff that its personnel would not be provided a full-time support team to assist plaintiff's personnel in their work on the Argus project while in India;

     j.     It failed to inform plaintiff that its personnel would have to perform other people's job responsibilities despite plaintiff's personnel being contracted as a Validation Manager responsible for managing, directing, advising, reviewing, and approving the work, not in producing the actual work.

     k.     It failed to inform plaintiff that its personnel would have to work unreasonable hours;

     l.     It failed to inform plaintiff that its personnel would have to work seven days a week for up to twenty-hour shifts at a time;

     m.     It failed to inform the plaintiff that its personnel would not have reasonable time off including Thanksgiving when other employees were given time off;

     n.     It failed to inform plaintiff that its personnel would have to work despite being physically ill;

     o.     It failed to inform plaintiff that its personnel would be isolated and without communication to the outside world.

     p.     It failed to inform plaintiff that its personnel a female, would throughout the course of the Argus project, be denied access to a manager's assistance due to her "status" as a female employee;

q.      It allowed Naples to be repeatedly subjected to deplorable conditions and treatment.

r.      It failed to inform plaintiff that other employees who happened to be male would be treated differently in that male counterparts were given high quality accommodations, allowed to speak with management, and were reimbursed for expenses and paid in a timely fashion.

s.      It unreasonably delayed plaintiff's reimbursement for travel expenses.

t.      It unreasonably delayed plaintiff compensation for work performed and hours worked.

12.     On divers days plaintiff complained about the treatment Naples received in India and the delay in her reimbursement and compensation.

13.     Plaintiff was repeatedly assured that there would be no adverse ramifications for speaking out about said issues and that plaintiff would receive all reimbursement and compensation owed.

14.     Plaintiff was not paid and still has not received full payment on monies due.

15.     Plaintiff's contract was terminated.

16.     As a direct and proximate result of 3i's breach plaintiff has suffered damages.

17.     Plaintiff at all times relevant fulfilled its obligations under the contract.

**SECOND COUNT - FRAUD IN THE INDUCEMENT**

18.    Plaintiff alleges and incorporates by reference as though fully set forth herein each and every allegation set forth in the above paragraphs.

19.    Plaintiff was induced to accept the contract and position for its personnel and subsequent assignment to India based on the promises of 3i, it agents, servants and/or employees, including but not limited to the promises of payment for work performed, timely payment for work performed, a permanent position and/or the opportunity for a permanent position with Ranbaxy and representations made to plaintiff, that if plaintiff's personnel would be assigned to India, they would be treated like Ranbaxy employees. Relying on the promises made by 3i, plaintiff accepted contract and the assignment to her detriment.

20.    As a result of said misrepresentations plaintiff was damaged.

**THIRD COUNT  -  UNJUST ENRICHMENT**

21.    Plaintiff alleges and incorporates by reference as though fully set forth herein each and every allegation of the first count.

22.    Plaintiff seeks to recover the value of services performed for and on behalf of 3i for their benefit for which it has not been compensated.

23.    As a result of said services the plaintiff was damaged.

**FOURTH COUNT  -  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

24.    Plaintiff alleges and incorporates by reference as though fully set forth herein each and every allegation of the First Count.

25.    3i breached the implied covenant of good faith and fair dealing.  The defendants had an obligation to treat the plaintiff fairly and to perform their contractual obligations in good faith.

26.    3i engaged in a design to mislead or to deceive the plaintiff. The defendants neglected or refused to perform their duties.

27.    As a result of 3i's actions the plaintiff has been damaged.

## FIFTH COUNT – NEGLIGENT MISREPRESENTATION

28.    Plaintiff alleges and incorporates by reference as though fully set forth herein each and every allegation set forth in the above paragraphs.

29.    3i actions consist of negligent misrepresentation.   3i made untrue statements to the plaintiff.  The plaintiff relied on said untrue statements and the plaintiff was damaged.

## SIXTH COUNT – INNOCENT MISREPRESENTATION

30.    Plaintiff alleges and incorporates by reference as though fully set forth herein each and every allegation set forth in the above paragraphs.

31.    3i actions consist of innocent misrepresentation.   3i made untrue statements to the plaintiff.  The plaintiff relied on said untrue statements and the plaintiff was damaged.

## SEVENTH COUNT - UNFAIR TRADE PRACTICES (C.G.S. Sec. 42-110a *et seq.)*

32.    Plaintiff alleges and incorporates by reference as though fully set forth herein each and every allegation set forth in the above paragraphs.

33.     The actions of 3i violate the Unfair Trade Practices Act C.G.S.A. Sec. 42-110a *et seq.)*

34.     At all times material 3i was a "person" within the meaning of C.G.S. Sec. 42-110a(3).

35.     At all times material, 3i engaged in trade or commerce within the State of Connecticut.

36.     3i's conduct as alleged herein violated the Connecticut Unfair Trade Practices Act, C.G.S. Sec. 42-110a *et seq.* (CUTPA) in that it is unfair, immoral, unethical, oppressive, unscrupulous and/or deceptive and has caused substantial harm to plaintiff.

37.     Pursuant to C.G.S. Sec. 41-110g (c), a copy of this complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection.

38.     As a direct and proximate result of the 3i's violation of CUTPA, plaintiff has suffered monetary and other damages as are more fully described herein.

**EIGHTH COUNT  - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

1.      Plaintiff alleges and incorporates by reference as though fully set forth herein each and every allegation set forth in paragraphs 1-20 of the First Count.

21.     At all times relevant, Lou Ann Naples (Hereinafter referred to as "Naples") was the employee of plaintiff and was the individual placed by plaintiff under the contract it had with 3i.

22.     The actions of 3i, it agents, servants and/or employees caused plaintiff to suffer emotional distress. In that:

    a.  In that it knew or should have known that Naples had to work and live under substandard conditions and knew or should have known about the dangerous conditions existing in India;

    b.  In that it knew or should have known that Naples was not being treated in the same manner as Ranbaxy employees;

    c.  In that 3i ignored complaints made by Naples;

    d.  In that 3i allowed the conditions to continue without taking any action to correct the same;

    e.  In that it failed to pay her what she was due;

    f.  In that 3i did not treat Naples in a fair and reasonable manner when it terminated the contract.

23.    By terminating the plaintiffs contract under the circumstances set forth herein 3i engaged in conduct which created an unreasonable and foreseeable risk of causing Naples emotional distress likely to lead to illness or bodily harm. As such, 3i is liable for negligent infliction of emotional distress.

24.    As a result of the Defendants' negligent infliction of emotional distress, the Plaintiff has suffered damages including: lost wages and benefits; the stress of unemployment; loss of self-esteem; mental anguish and severe emotional distress; loss of enjoyment of life; and substantial legal fees and costs. The Plaintiffs damages are continuing in nature.

**WHEREFORE, Plaintiffs Claim:**

1.   Compensatory damages

2.   Punitive damages

3.   Attorney's fees, costs and interest; and

4.   Such other further relief as this Court may deem just and proper.

Hereof fail not but of this writ with your doings thereon make due service and return according to law.

Dated at Newington CT this 18th day of March 2008.

**PLAINTIFFS**

BY _____

       Vincent F. Sabatini, Esq.
       SABATINI AND ASSOCIATES, LLC
       One Market Square
       Newington, CT 06111
       (860) 667-0839 Fax 667-0867
       Email: vsabatini@sabatinilaw.com
       Juris Number: 052654

A TRUE COPY
ATTEST:
JOSEPH KLETT STATE MARSHAL
COUNTY C. HARTFORD

## STATEMENT OF AMOUNT IN DEMAND

The amount of the damages exceeds $15,000.00 exclusive of interest and costs.

1

*TekDOC*

## SOFTWARE SERVICES AGREEMENT

This Software Services Agreement is part of the agreement made on January 18th 2005 by and between Innovative Business Solutions, Inc. (hereinafter "IBSI") and TekDOC Services, LLC. (Tax id: 06-1578389) jointly on behalf of itself and its personnel, (hereinafter "Contractor"), and the parties agree as follows:

1. **PURPOSE:** IBSI desires to procure professional services in the areas of programming, analysis, design and/or other computer related consulting services. IBSI shall utilize these services either at its Client location or at its practice centers located at various IBSI offices. IBSI shall identify the specific training, skills, abilities and experience required to perform the project. Contractor shall fully disclose the nature and extent of Contractor's training, skills, abilities and experience in the specialized areas of the computer industry and hereby warrants that such information provided is true and accurate. IBSI shall evaluate Client's requirements to perform a project in relation to the training, skills, abilities and experience of Contractor and if it appears Contractor is suitable to perform the project; IBSI shall inform Client and Contractor regarding each other's needs and abilities and shall negotiate a rate of compensation for Contractor and IBSI.

2. **PERFORMANCE AND INDEPENDENT STATUS:** The relationship created by the Agreement is that of Broker-Independent Contractor. Contractor has advised, or shall advice, its personnel that neither Contractor nor any of its personnel is an employee of IBSI or Client. Neither Contractor nor any of its personnel is entitled to any benefits provided or rights guaranteed by IBSI or Client, or by operation of law, to their respective employees, including but not limited to group insurance, liability insurance, disability insurance, paid vacations, sick leave or other leave, retirement plans, health plans, premium "overtime" pay, and the like. Since Contractor is an Independent Contractor, IBSI will make no deductions from compensation paid to Contractor for any federal or state taxes or FICA, and IBSI and Client have no obligation to provide worker's compensation coverage for Contractor or Contractor's personnel or to make any premium "overtime" payments at any rate other than the normal rate agreed to in the purchase order. It shall be the Contractor's responsibility to provide worker's compensation and, if applicable, pay any premium "overtime" rate, for its employees who work on the project covered by this Agreement to make required FICA, FUTA, income tax withholding or other payments related to such employees and to provide IBSI with suitable evidence of same when requested. It shall be Contractor's responsibility for obtaining all visas necessary to permit its employees and agents to be engaged on the work hereunder. Contractor hereby indemnifies and holds harmless IBSI against any loss, cost or other injury as a result of the Contractor's engaging employees or agents not legally permitted to work in the United States. Contractor agrees to conform to and obey all its obligations under state and local statues and laws including, without limitation, those relating to, immigration, employee compensation, withholding and benefits.

3. **WARRANTY:** Contractor acknowledges for itself and its personnel that information provided by it, including, but not limited to, resume, interview, references, etc., is true and accurate to the best of Contractor's knowledge and Contractor acknowledges that such information will be relied upon by IBSI and Client in order to evaluate the appropriateness of Contractor, or its personnel, performing the service on Client's specific project. Contractor warrants that neither Contractor nor any of its personnel are restricted by any employment or other contract which may prevent Contractor or its personnel from fully performing service for Client as referenced herein.

Contractor

IBSI

1

Contractor understands that any misstatements or lack of candor by Contractor, or any of its personnel of the qualifications or availability of it or its personnel may be grounds for immediate termination by Client of any assignment and institutes a breach of this Agreement. Contractor warrants that it maintains, and shall maintain, a set of books and records to reflect items of income and expenses of its trade or business. Contractor further warrants that Contractor has paid, and shall continue to pay, timely and fully any and all state and federal taxes, including employee withholding taxes, if applicable.

### 4. COMPENSATION FOR SERVICE:

A. Payment for services actually performed will be made in corporate or business name of Contractor from time to time. The payment amount to Contractor will be as reflected in the Purchase Order, Exhibit "A", which when signed by Contractor shall be incorporated herein in full by this reference thereto, and no other compensation in any form, including benefits, will be provided by IBSI or anyone else.

B. If compensation is to be based on an hourly rate, Contractor shall maintain records of the hours that services have been performed, have a Client representative verify those hours by signing the records, and submit to IBSI those records along with Contractor's invoice for the amount due to Contractor for the hours worked and verified. Procedurally, IBSI will then bill Client based upon the hours contained in Contractor's invoice at the rate agreed upon between IBSI and Client. The difference between the amount paid to IBSI by Client and the amount due to Contractor per Contractor's invoice shall be retained by IBSI in consideration for IBSI performing its services relating to the subject matter of this agreement.

### 5. OTHER BENEFITS:
Other than as provided in section 4 above, no benefits will be paid to Contractor or its personnel by IBSI or Client, unless specifically agreed to in a writing signed by the party who will become obligated to pay such benefit. No travel, living, training, entertainment or other costs will be allowed for Contractor, or its personnel as otherwise agreed upon in the purchase order. IBSI will provide no training, tools, equipment or other materials to Contractor. Contractor's invoiced hours, if payment is an hourly rate, will include no time spent in formal training or costs related thereto.

### 6. COMPETITION; OTHER SERVICES:

A. During the term of this Agreement, and any renewals thereof, and for one year after the expiration of the initial and renewal periods, Contractor agrees with respect to employee/personnel that is the subject of the Subcontract( or Work-Order) , that it will not directly or indirectly, provide or attempt to provide(or advise others of the opportunity to provide) services of that employee/personnel to any CLIENT to which **CONTRACTOR** has performed services or to which **CONTRACTOR** was introduce under this agreement; or retain or attempt to retain, directly or indirectly, for itself or another part, the services of another IBSI consultant/employee to which **CONTRACTOR** has been introduced or has received information about through IBSI or through any CLIENT for which **CONTRACTOR** has performed services through IBSI. For the purpose of this paragraph, the term CLIENT includes parents, subsidiaries, and affiliates of the CLIENT during the term of the contract (including renewals and/or extensions) and for a period of (1) year after the termination of the contract and/or relationship for that employee/personal. In the event of an actual or threatened breach by **CONTRACTOR** of the provisions of this paragraph, IBSI shall be entitled to injunctive relief restraining **CONTRACTOR** from the breach or threatened breach and/or liquidated damages to IBSI of 40% of gross proceeds derived from such breach. Nothing herein shall be construed as prohibiting IBSI from pursuing any

_____
Contractor

_____
IBSI

2

other remedies available to the company for such breach or threatened breach.

1) Contractor or any of its personnel: (a) provides or attempts to provide, or advises others of the opportunity to provide, directly or indirectly, any services to any Client to which Contractor has been introduced or about which Contractor has received information through IBSI or though any Client for which Contractor has performed services or to which Contractor was introduced under this Agreement; or (b) retains or attempts to retain, directly or indirectly, for itself or for any other party, the services of another one of IBSI's Contractors or employees to which Contractor has been introduced or has received information through IBSI or through any Client for which Contractor has performed services or to which Contractor was introduced to this Agreement; and

2) Such services are provided or such other Contractor or employee is retained in any capacity whatsoever, including as a Contractor or employee. For the purposes of the above, the term "Client" includes any individuals working directly or indirectly under the project manager specified in Exhibit A.

B. The parties agree that the amount of the finder's fee shall be the same amount that IBSI would have earned if IBSI had placed Contractor, or such other person or persons, in such position(s) with any Client or other party covered hereby as that amount is calculated by IBSI's policy at the time such services commence. Such amount shall be due and payable as if earned pursuant to Section 4 herein above.

7. NON-COMPETITION: OTHER SERVICES: Contractor may, to the extent consistent with this Agreement, provide its services for others and through other Brokers for clients not specified in the Exhibit A

8. CONFIDENTIALITY: TRADE SECRETS:

A. Contractor acknowledges that by the very nature of the services to be performed for Client, Contractor or its personnel shall become aware of Client's trade secrets and confidential information. Except as Contractor may negotiate per the following paragraph B, Contractor acknowledges that all such information shall be used by Contractor, and its personnel, only to perform the services of the project for Client and no other purpose. Contractor, and its personnel, shall in no manner reveal or disseminate such information to any third party, including IBSI. Contractor, and its personnel, understand that such trade secrets and confidential information shall include all past, present and/or future plans, provisions, designs, forms, formats, procedures, methods, and other information relating to Client's technology, technical data, products, patents, copyrights, research and development programs, financial, legal and marketing data and other technical and business information.

B. While performing services for Client, Contractor may create or develop certain procedures, processes, systems or other similar items which may properly be the subject of certain intellectual property rights including trade secrets, copyrights or patents. So that no intellectual property rights to anything created or developed may be confused, Contractor and Client may negotiate an agreement on the ownership of such rights prior to the commencement of the services related to the project. If Contractor and Client do not so agree in writing, Contractor hereby agrees that such rights shall become the exclusive property of Client.

C. Contractor understands that IBSI is in a very competitive industry where confidential information and trade secrets are extremely valuable and important to IBSI's economic life. Contractor may become familiar with certain business methods, procedures, processes and other manners by which IBSI transacts its business. Contractor hereby agrees that neither it nor any of

Contractor                                              IBSI

3

its personnel shall use any of such information, directly or indirectly for its or their own benefit nor shall they disseminate such information to any third party for any purpose whatsoever.

### 9. LIABILITY INDEMNITY:

A. Because of the Independent Status of Contractor and its personnel. Contractor is solely and completely accountable for the services it provides to Client and neither Client, not Client's customers or its clients, nor IBSI, shall have any liability whatsoever to any party for such services provided by Contractor or its personnel. Contractor hereby releases IBSI from any liability relating to representations about the task requirements or to conditions under which Contractor may be performing services; those being negotiated by Contractor. Contractor hereby releases IBSI from any liability for statement made by IBSI, without malice, to third parties who inquire about Contractor's performance.

B. Further because of the relationship to the subject matter of this Agreement, including, but not by way of limitation IBSI has no right to control any aspect of the project which Contractor will be performing services, Contractor hereby indemnifies and holds IBSI and/or Client, as appropriate, harmless from any and all liability, cost, expense, or other financial detriment whether incurred or alleged, which Contractor, or its personnel may cause, and/or claim, directly or indirectly, due to its act or omission during the performance or non-performance or its services for or on behalf of Client, or otherwise, any third party holding that Contractor or any of Contractor's personnel is the employee of firm and/or IBSI and not an Independent Contractor as has been represented to IBSI by Contractor.

### 10. ASSIGNMENT: Any service performed on a project will be in accordance with the terms
of this Agreement. Contractor is to provide services through its personnel as specifically identified and who have agreed to be bound by this Agreement only, and no other personnel, for whom Contractor shall be solely responsible, and neither Contractor nor any of the specifically identified personnel may assign its rights under this Agreement or any purchase order and may not sub-contract its obligations hereunder to others. In case of assignment or sub-contract, Contractor and/or the assigning or sub-contracting personnel shall be liable to IBSI for damages due to any loss or reduced fees received by IBSI as a result thereof. IBSI may arrange for other Independent Contractors to perform the same or similar services that Contractor performs on any assignment in accordance with IBSI's agreements with Clients.

### 11. INSURANCE: Contractor shall obtain with itself and its personnel as the insured before
providing services, at its own expense, comprehensive general liability insurance coverage for projects covered by this Agreement and shall name IBSI as an additional insured. Contractor shall provide a copy of the binder and policy to IBSI upon request.

### 12. BREACH: Any breach of any provision of this Agreement by Contractor or its personnel
shall entitle IBSI to recover from Contractor, or its personnel, damages and/or injunctive relief to the fullest extent of the law.

### 13. HIRING OF CONTRACTOR EMPLOYEES BY IBSI: IBSI shall not, during and one year
after of the termination of this Agreement, solicit, offer, or in any way encourage any employee, consultant or agent of the Contractor who works on a project covered by this Agreement to leave Contractor to work for IBSI, unless agreed by Contractor in writing.

### 14. TERMS OF AGREEMENT:

A. Upon execution of this Agreement, the term shall commence and all terms and conditions shall remain in force during any and all periods for which Contractor's, or Contractor's

_____
Contractor

_____
IBSI

4

personnel, services are provided to a Client under this Agreement and for any other periods as stated herein. In addition, if Contractor is referred to a Client and Contractor decides not to perform services for Client, Contractor acknowledges that certain terms and conditions shall be applicable herein for a period of one year subsequent to the date on which Contractor became aware of the identity of the proposed Client.

B. Contractor's service under this Agreement shall terminate at the end of the time required to perform the service on the Client project and any renewals or extensions thereof; provided, however, Contractor understands that there may be numerous reasons why Client may wish to terminate the project on which Contractor is performing services or terminate Contractor's services and under those circumstances whatever they may be, Contractor's services may be terminated by Client before the services are completed, or the services are no longer required.

C. The agreement is effective as of the date first written above and may be terminated by either party at any time without further obligation upon fourteen (14) days written notice to the other party.

**15. MISCELLANEOUS:** This Agreement represents the entire Agreement of IBSI and Contractor and any modification thereof shall not be effective unless contained in a writing signed by both parties. Each provision of the Agreement shall be considered severable such that if any one provision or clause may not be given effect without the connecting provision or clause. Contractor and Contractor's personnel represent that they and each of them, have read and understand the terms of this Agreement, have had an opportunity to ask any questions and to seek the assistance of their legal counsel, and are not relying upon any advice from IBSI in this regard. This Agreement shall be governed by laws of Pennsylvania. If a controversy arises between IBSI and Contractor, or any of Contractor's personnel, the prevailing party shall be entitled to costs and attorney's fees.

Executed in the Bucks County, State of Pennsylvania on the date first written above.

**TekDOC Services, LLC**
21 Sea Crest Road
Old Say brook, CT 06475

By: LouAnn Naples
Title: Owner
Date: January 20, 2005

**Innovative Business Solutions, Inc.**
3000 Cabot Blvd West, Suite # 225
Langhorne, PA 19047

By: B SHIVAPRAKASH
Title: CEO
Date: 1/20/05

Contractor

IBSI

5

## EXHIBIT "A"

### TO

### SOFTWARE SERVICE AGREEMENT (IBSI)
### PURCHASE ORDER

This Purchase agreement, made and executed on January 18th, 2005 hereby made a Part of Software Service Agreement dated 18thday of January 2005 between Innovative Business Solutions Inc. (IBSI) and TekDOC Services, LLC. (Contractor)

**Personnel contracted for this Task:**

| | | |
|---|---|---|
| Name | : | Lou Ann Naples |
| SSN | : | 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 |
| Straight Time Rate | : | $ 85 an hour for 8 hours a day and any additional hour be $85/hr |
| Client | : | Ranbaxy Pharmaceutical Inc |
| Start Date | : | 01/24/2005 |
| Period of Performance: | | 6 month with possible extensions |

**Invoice and Payment Schedule:** Contractor shall invoice monthly with authorized Client signed timesheets. Valid invoices shall be payable Net 30 days.

**Invoice to:**
Innovative Business Solutions, Inc.
3000 Cabot Blvd
Suite#225, Langhorne, PA – 19047

If questions Call or Fax:
215-891-0809 ext 12
215-891-0921(fax)

Agree To:
TekDOC Services, LLC.

By: Lou Ann Naples
Title: Owner
Date: January 18, 2005

Innovative Business Solutions Inc.

By:
Title: CEO
Date: 1/20/05

Contractor

IBSI

6

## EXHIBIT "A"

### TO

### SOFTWARE SERVICE AGREEMENT (IBSI)

#### PURCHASE ORDER

This Purchase agreement, made and executed on July 8th 2005 is hereby made a Part of Software Service Agreement dated Jan 18thrt 2005 between IBSI Solutions, Inc (IBSI) and TekDOC Services ,LLC. (Contractor)

Personnel contracted for this Task:

| | | |
|---|---|---|
| Name | : | Lou Ann Naples |
| SSN | : | 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 |
| Straight Time Rate | : | $87/hr for 8 hrs a day and any additional hour would be $87/hr. |
| Client | : | Ranbaxy Pharmaceutical Inc. |
| Start Date | : | July 24th 2005 |
| Period of Performance | : | 6 months with possible extensions |

Invoice and Payment Schedule: Contractor shall invoice monthly with authorized Client signed timesheets. Valid Invoices shall be payable net 40 days.

Termination: Contractor can terminate this contract with 30 days written notice to the end client ( Ranbaxy Pharmaceutical)/IBSI. Where as end Client may terminate the contract with or with out notice.

Invoice to:                               If questions Call or Fax:
Innovative Business Solutions, Inc.            215-891-0809 ext 12
3000 Cabot Blvd west, Suite # 225              215-891-0921(fax)
Langhorne, PA- 19047


Agree To:
TekDOC Services, LLC.                     Innovative Business Solutions Inc.

Sign: _____                    Sign: _____
Name: Lou Ann Naples                      Name: Bidlux Shivaprakash
Title: Owner/Manager                      Title: CEO
Date: July 26, 2005                       Date: 7.27.05


---

Contractor                                IBSI                           1