**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TEKDOC SERVICES, LLC, et al., | CIVIL ACTION NO. 09-6573 (MLC) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| 3i-INFOTECH INC., et al., | |
| Defendants. | |

**COOPER, District Judge**

The plaintiffs, Lou Ann Naples ("Naples") and TekDoc Services,
LLC ("TekDoc"), brought this action against the defendants, 3i-
Infotech Inc. (formerly known as "Innovative Business Solutions,
Inc." or "IBSI", and uniformly referred to here as "Infotech") and
Ranbaxy, Inc. ("Ranbaxy"). (See dkt. entry no. 95, 2d Am. Compl.)[1]
The plaintiffs raise claims against Ranbaxy for breach of contract,
breach of the implied covenant of good faith and fair dealing,
unjust enrichment, innocent misrepresentation, negligent infliction
of emotional distress, negligent misrepresentation, and fraud in
the inducement.  (Id. at 11-17.)

---

[1] Infotech earlier moved for summary judgment in its favor and
against the plaintiffs on the claims raised against it in the
Second Amended Complaint.  (See dkt. entry no. 137, 1-17-12 Notice
of Infotech Mot.)  The Court granted that motion, thereby resolving
all of the claims raised in the action against Infotech.  (See dkt.
entry no. 161, 8-16-12 Order & J.)  See generally TekDoc Servs.,
LLC v. 3i-Infotech Inc., No. 09-6573, 2012 WL 3560794 (D.N.J. Aug.
16, 2012).  Only the claims raised against Ranbaxy remain viable.

Ranbaxy now moves for summary judgment in its favor and against the plaintiffs on all of the claims raised against it. (See dkt. entry no. 167, Notice of Ranbaxy Mot.; dkt. entry no. 167-2, Br. in Supp.)  The plaintiffs oppose the motion.  They disagree with Ranbaxy about the choice of law issues relating to and substantive resolution of each of those claims.  (See dkt. entry no. 171, Opp'n Br.)

The Court now resolves the Ranbaxy Motion on the papers and without oral argument.  See L.Civ.R. 78.1(b).  For the reasons that follow, the Court will grant the Ranbaxy Motion, and enter judgment in Ranbaxy's favor on all of the claims raised against it.

## I.   BACKGROUND

### A.   The Plaintiffs

Naples is a citizen of Connecticut.  See TekDoc Servs., 2012 WL 3560794, at *1.  She is the sole member and employee of TekDoc, a limited liability company organized under the laws of that state. (See dkt. entry no. 167-8, Ranbaxy Statement of Undisputed Facts ("Ranbaxy SOF") at ¶ 1; dkt. entry no. 173, Pls.' Response to Ranbaxy SOF at ¶ 1.)  It appears that Naples has worked in and has experience in the field of information technology ("IT").

### B.   Infotech & Ranbaxy

Infotech is a staff augmentation firm that matches clients with temporary computer software assignments with IT professionals.

(See Ranbaxy SOF at ¶ 4; Pls.' Response to Ranbaxy SOF at ¶ 4.)
The nature of Infotech's business requires it to contract with both
its clients and the IT professionals whom it recruits to complete
its clients' projects.  See TekDoc Servs., 2012 WL 3560794, at *1.

Infotech executed a written contract with one of its clients,
Ranbaxy, in July of 2004.  (See dkt. entry no. 172-1, Ex. E to
Sabatini Aff., Master Services Agreement.)  Ranbaxy provides, inter
alia, financial and legal services to related entities.  (See
Ranbaxy SOF at ¶ 3; Pls.' Response to Ranbaxy SOF at ¶ 3.)  It is
organized under the laws of Delaware and maintains its principal
place of business in Princeton, New Jersey.  (See Ranbaxy SOF at
¶ 3; Pls.' Response to Ranbaxy SOF at ¶ 3.)[2]

C.   **Naples's Initial Interactions with Infotech & Ranbaxy**

Infotech, following execution of the Master Services
Agreement, advertised that it sought a "validation specialist,

---

[2] Infotech and the plaintiffs earlier represented that Ranbaxy
manufactures pharmaceutical products, is organized under the laws
of India, and maintains administrative offices in Princeton, New
Jersey.  (See dkt. entry no. 137-2, Infotech SOF at ¶¶ 2, 10-11;
dkt. entry no. 150, Pls.' Response to Infotech SOF at ¶¶ 2, 10-11.)
Those representations informed the Court's earlier Memorandum
Opinion, which concerned Infotech's motion for summary judgment.
See TekDoc Servs., 2012 WL 3560794, at *1.

It now appears that the Court was misinformed, as Infotech and
the plaintiffs conflated facts concerning Ranbaxy with those
concerning a related entity, Ranbaxy Laboratories Ltd. ("Ranbaxy
Labs").  Ranbaxy Labs manufactures pharmaceutical products, is a
corporation organized under the laws of India, and relies on
Ranbaxy -- an entity with administrative offices in Princeton --
for legal, financial, and other professional services.  (See
Ranbaxy SOF at ¶¶ 3, 8; Pls.' Response to Ranbaxy SOF at ¶¶ 3, 8.)

contract to hire, temp to perm." (See dkt. entry no. 172-1, Ex. B to Sabatini Aff., Tr. of 3-8-11 Naples Dep. at 25.) Naples saw the advertisement, forwarded her résumé to Infotech, and spoke with an Infotech recruiter. (See id. at 26.) The Infotech recruiter explained to Naples that Ranbaxy sought an independent contractor for a six-month, "temp to perm" assignment, and that Ranbaxy would only consider candidates who were interested in securing so-called "permanent" employment at Ranbaxy. (See dkt. entry no. 172-1, Ex. A to Sabatini Aff., Tr. of 10-27-08 Naples Dep. at 54; Tr. of 3-8-11 Naples Dep. at 27.)[3] The recruiter further explained that Ranbaxy employees would both interview Naples and retain decision-making authority relating to her potential hire as a contractor and her later potential conversion to a full-time Ranbaxy employee. (See Tr. of 10-27-08 Naples Dep. at 56-57.)

Naples was twice interviewed by Ranbaxy personnel. She first spoke by telephone with Ranbaxy's IT manager, Jeevan Rebba, and later met with both Rebba and his supervisor, Suneet Walia, in Princeton. (See id. at 59-60, 63-64; dkt. entry no. 167-4, Walia Decl. at ¶¶ 2-3; dkt. entry no. 167-5, Rebba Decl. at ¶¶ 2, 4.) Following those interviews, Walia informed Infotech that Ranbaxy

---

[3] Naples has explained that "permanent" and "full-time" are, insofar as the Ranbaxy Motion is concerned, interchangeable terms. (See dkt. entry no. 172-1, Ex. C to Sabatini Aff., Naples Aff. at ¶ 7 ("I believed a permanent position to mean that I would be made a full-time employee, rather than a temporary employee.").)

4

would award the independent contractor position to Naples, via TekDoc. (<u>See</u> Walia Decl. at ¶ 3; Rebba Decl. at ¶ 4.)

Naples asserts that Rebba and Walia, during the interview process, described the independent contractor position as "temp to perm" and "contract to hire". (Tr. of 10-27-08 Naples Dep. at 56-57, 59; Tr. of 3-8-11 Naples Dep. at 28, 32.) She also asserts that both Rebba and Walia represented that Ranbaxy: (1) intended to convert the independent contractor to a full-time employee after six months; and (2) would only award the independent contractor position to her if she was interested in joining at Ranbaxy as a full-time employee upon the completion of the independent contractor position's six-month term. (<u>See</u> Tr. of 10-27-08 Naples Dep. at 64-65; Tr. of 3-8-11 Naples Dep. at 30, 32, 34; Naples Aff. at ¶ 6.) Naples claims that she would not have been interested in the independent contractor position but for these representations. (<u>See</u> Naples Aff. at ¶ 9; Tr. of 10-27-08 Naples Dep. at 266.)

Rebba and Walia both acknowledge that they discussed the possibility of converting the independent contractor to a full-time Ranbaxy employee. (<u>See</u> Walia Decl. at ¶ 5; Rebba Decl. at ¶ 6.) But both of them deny representing that such conversion would be "automatic" or "guaranteed"; instead, they assert that they spoke with Naples about the "potential opportunity" of a conversion to

full-time employment by Ranbaxy. (Walia Decl. at ¶ 5; Rebba Decl. at ¶ 6.) Walia, for example, states in his declaration that:

> I discussed the potential opportunity for her to join Ranbaxy in a full-time position if a position that matched her capabilities and experiences was approved, and that it would be subject to the Ranbaxy budget process and approvals by corporate headquarters. I never told Naples that she could be automatically converted from a temporary contractor to being hired as a permanent employee, or that the temporary position was guaranteed to be converted from a temporary position to a permanent position, or any other words to that effect. The substance of the discussion I had with Naples about the full-time permanent employee position was that it was a possibility for her, if it became available; and if it did become available, she would be one of the candidates to be considered for the position; however, Ranbaxy had the right to deny her the position, and Naples had the right to deny the position.

(Walia Decl. at ¶ 5.) Ranbaxy points to Naples's deposition testimony as proof that she understood that the six-month temporary position was, in a sense, an ongoing interview for any full-time position that became available at Ranbaxy. (See Ranbaxy SOF at ¶ 23 (citing Tr. of 10-27-08 Naples Dep. at 65).)

Naples denies that Ranbaxy informed her that it had neither established nor funded the full-time position. (See Naples Aff. at ¶ 8.) She asserts that such knowledge would have lessened her interest in the independent contractor position. (Id. at ¶ 9.)

**D.   Naples's Acceptance of the Independent Contractor Position**

Naples accepted the independent contractor position, and TekDoc and Infotech executed a written contract ("Software Services Agreement"). (See dkt. entry no. 172-1, Ex. F to Sabatini Aff., Software Services Agreement.)  The first exhibit to the Software Services Agreement, the First Purchase Order, states that Naples would begin working for Ranbaxy on January 24, 2005, for a period of "6 month [sic] with possible extensions". (Dkt. entry no. 172-1, Ex. F to Sabatini Aff., First Purchase Order.)

The Software Services Agreement does not mention Ranbaxy's alleged promise to convert Naples from an independent contractor to a full-time Ranbaxy employee, and it appears not to contemplate that possibility.  (But see Software Services Agreement at § 6 (setting forth non-solicitation and non-competition covenants).) It does, however, provide that it "may be terminated by either party at any time without further obligation upon fourteen (14) days written notice to the other party." (Id. § 14(C).)

**E.   Naples's Time in New Jersey, at Ranbaxy**

Naples worked as an independent contractor at Ranbaxy, through her relationships with TekDoc and Infotech, from January 24, 2005 to July 8, 2005.  On that date, she, Ranbaxy, and Infotech agreed to extend her term as an independent contractor for an additional "6 months with possible extensions". (Dkt. entry no. 172-1, Ex. F

7

to Sabatini Aff., Second Purchase Order.)   The Second Purchase
Order provides that the plaintiffs could terminate the Software
Services Agreement by providing thirty days' written notice to both
Ranbaxy and Infotech.   (See id.)   It also provides that the "end
Client", Ranbaxy, could terminate the Software Services Agreement
either with or without notice.   (See id.)

Rebba approached Naples in October of 2005, during the period
specified in the Second Purchase Order, and asked her to accept an
assignment at Ranbaxy Labs in Gurgaon, India.   (See Rebba Decl. at
¶ 8; see also 10-24-05 Letter from Walia to Naples; dkt. entry no.
172-1, Ex. D to Sabatini Aff., Tr. of Rebba Dep. at 114-15.)
Naples was not bound to accept that assignment; both Ranbaxy and
the plaintiffs appear to acknowledge that Rebba's request exceeded
the scope of the Software Services Agreement.   (See Tr. of 10-27-08
Naples Dep. at 86; Rebba Decl. at ¶ 8.)   Naples nonetheless
accepted it because she feared losing the possibility of full-time
employment at Ranbaxy.   (See Tr. of 10-27-08 Naples Dep. at 86
("[I]f I declined that trip, I would have been walking away from
the job that I wanted.").)

Naples negotiated the terms of that assignment directly with
Ranbaxy.   Walia instructed Naples to secure a multiple entry visa.
(See dkt. entry no. 172-1, Ex. O to Sabatini Aff., 10-24-05 Letter
from Walia to Naples.)   Further, Ranbaxy set forth the nature and

scope of Naples's work at Ranbaxy Labs, and agreed, among other things, to arrange for Naples's lodging, transportation from the airport, and daily transportation between her lodging and work site. (See Naples Aff. at ¶¶ 25, 27-28, 31, 39, 42; Rebba Decl. at ¶ 8; Tr. of 1-27-08 Naples Dep. at 93; Tr. of Rebba Dep. at 121-24, 134-36; dkt. entry no. 168-9, Ex. 11 to White Decl., 10-28-05 E-mail Chain between Naples, Rebba, and Aparna Mazumdar.)

Naples alleges that Ranbaxy both established and funded the full-time position before she left for India. (See Tr. of 10-27-08 Naples Dep. at 94; Naples Aff. at ¶ 17.)[4] She asserts that Ranbaxy posted the position internally, that Rebba interviewed her for the position, and that Rebba informed Naples that he intended to hire her. (Naples Aff. at ¶¶ 17-19.)[5] Ranbaxy disputes that it ever established or funded that position, and further disputes that Rebba either interviewed Naples or had authority to hire Naples for the position. (See dkt. entry no. 184, Ranbaxy Response to Pls.' SOF at ¶ 27; see also Rebba Decl. at ¶ 9.)

---

[4] Both the plaintiffs and Ranbaxy have submitted excerpts of the 10-27-08 Naples Deposition transcript. (See Tr. of 10-27-08 Naples Dep.; dkt. entry nos. 168-4 through 168-6, Ex. 9 to White Decl., Tr. of 10-27-08 Naples Dep.) Citations to the transcript of that deposition may relate to either or both of those submissions.

[5] Although Naples asserts that Ranbaxy's human resources department approved the full-time position "and posted [it] within Ranbaxy offices, as per HR policy" (Naples Aff. at ¶ 17), the plaintiffs have not submitted a copy of that posting in their opposition to the Ranbaxy Motion.

### F.   Naples's Time in India, at Ranbaxy Labs

Naples arrived in India on October 29, 2009.  She asserts that she endured deplorable conditions throughout her stay.  (Opp'n Br. at 9, 10.)  When Naples arrived at the New Delhi airport, she was not, despite Ranbaxy's assurances, met by a driver.  (See Tr. of 10-27-08 Naples Dep. at 96.)  Naples thus paid a driver to transport her to her lodging, a guest house in Gurgaon.  (See id. at 97-99.)  She characterizes the conditions at the guest house as "despicable", describing it as a "run-down dorm" located in a dangerous area.  (Naples Aff. at ¶¶ 29, 31; dkt. entry no. 168-9, Ex. 16 to White Decl., 11-1-05 E-mail from Naples to Christine Pitcherello.)  She cites "weeks of no hot water, no heat, inadequate amounts of towels and toilet paper, bed bugs, insects, [and] lizards".  (Naples Aff. at ¶¶ 29-30.)  Naples argues that she suffered from both discomfort and humiliation based on her inability to shower, and from "bug bites over my entire body [that] made me so uncomfortable that I felt it ruined my life".  (Id. at ¶¶ 51-52.)

Naples asserts that the working conditions at Ranbaxy Labs were similarly "unbearable" (Opp'n Br. at 10), because she "was treated like a prisoner and a slave while working for Ranbaxy in India".  (Naples Aff. at ¶ 55.)  Naples regularly worked more than forty hours per week, and at times worked through weekends and

holidays, putting in as many as eighteen to twenty hours per day. (See Naples Aff. at ¶¶ 39, 55, 57; Tr. of Rebba Dep. at 124, 126-27.)  She alleges that Ranbaxy did not allow her to leave her work site for either lunch or dinner.  (Naples Aff. at ¶ 56.)  She further alleges that Ranbaxy did not allow her to make outgoing phone calls, denied her access to the internet, took her passport from her, and refused to return it.  (See Naples Aff. at ¶¶ 34, 55, 60; Tr. of 10-27-08 Naples Dep. at 122-23; Tr. of 3-8-11 Naples Dep. at 72.)

Naples corresponded with several friends during her stay in India and chronicled her experiences.  On November 2, 2005, she dispatched several copies of this message:

> Hey, well it didn't seem so bad here Wed [sic] at work, but this morning was the last straw for me.  There was a 7x1.5 inch lizard in my room.  The Guest House guys told me it was a cockroach.  I think there's a language problem.  It was definitely a reptile.  I told them that I was moving out this morning, so I packed all my things.  I'm at work now, but I might try to find out whether there is a shower at the office.  I would rather work all day and night than stay in the Guest House. . . .

(Dkt. entry no. 168-10, Ex. 18 to White Decl., 11-2-05 E-mail from Naples to Pitcherello; dkt. entry no. 168-10, Ex. 19 to White Decl., 11-2-05 E-mail from Naples to Dileep Katta, Jeremy Collings, and Stephanie Leaphart.)  In a later e-mail, she stated:

> . . . I haven't taken a nice shower in 2.5 weeks.  I am sick of cold showers!

11

I'm miserable here.  The work sucks.  Nobody is helping me do the work.  I work all day and night.  I get bitten by bugs in the Guest House.

I listen to guys cough up flem [sic] all night.  I don't even know how to spell that word.  The conditions at the Guest House are very unsanitary.

They wash my clothes, but they come out dirtier than when I gave them to them to clean. . . .

Everybody here knows that I'm not happy with my living and working conditions. . . .

To top it all off, I will probably go back to Princeton and find out that I have no job.

Anyway, I told the executive Director/VP guy that things suck here.  The work sucks and the Guest House sucks.  The food is bad too and I'm not even a picky eater.  I usually eat whatever someone puts on my plate.  But, I refuse to eat something, unless I know what the ingredients are.  They can't even tell me what I'm eating.  I'm sure that I've eaten a lot of bugs at the Guest House.

Anyway, I should be home soon.  The only thing I want to do is take a long, hot shower.  My life is ruined without hot water.  If I had hot water, I wouldn't complain about all these other things.  I just want to take a shower!!!!!!!

(Dkt. entry no. 168-10, Ex. 22 to White Decl., 11-17-05 E-mail from Naples to Kevin Jezewski.)

Naples sent Rebba an e-mail on November 4, 2005, reaffirming her interest in full-time employment with Ranbaxy.  (See dkt. entry no. 172-2, Ex. CC to Sabatini Aff., 11-4-05 E-mail from Naples to

Rebba.)  It appears that Naples did not correspond with Rebba about any issues relating to the guest house or her work conditions. (But see Naples Aff. at ¶¶ 35-37 (describing Naples's attempts to reach Rebba by telephone).)

Naples asserts that she repeatedly attempted to address her complaints about her living and working conditions with various Ranbaxy and Ranbaxy Labs employees, including Rebba and Walia. (See Naples Aff. at ¶¶ 35-38, 57-59; see also dkt. entry no. 168-10, Ex. 23 to White Decl., 11-17-05 E-mail from Naples to Rebba.)  Walia denies that Naples spoke to him about the working conditions at Ranbaxy Labs.  (See Walia Decl. at ¶ 7.)  Rebba and Walia each acknowledge that Naples spoke to them about her living conditions, and note that Naples was thereafter moved from the guest house to The Bristol, a hotel in Gurgaon.  (See Rebba Decl. at ¶ 10; Walia Decl. at ¶ 7 ("When I became aware of Naples' [sic] dissatisfaction with her living accommodations, that was resolved by her being moved to the Bristol Hotel as soon as that move could be made.  She did not complain to me about that hotel after she moved there.").)

Naples described The Bristol as a "nice hotel".  (Dkt. entry no. 168-11, Ex. 25 to White Decl., 11-21-05 E-mail from Naples to Collings, Katta, and Leaphart.)  In an e-mail dated November 21, 2005, she stated:

> . . . I will have a drink for you guys tonight.  I'm
> living the high life now and spending some money!
> It is so nice to be able to take a hot shower.

(Dkt. entry no. 168-11, Ex. 26 to White Decl., 11-21-05 E-mail from

Naples to Collings.)  In a separate e-mail, she stated:

> . . . I'm still in India.  Three weeks with no hot
> water!  I thought my life was over.  I've been moved to
> a hotel (I was staying at a guest house, which sucked!).
> I had my first hot shower on Saturday.  Life is so much
> better being able to take a shower!

(Dkt. entry no. 168-11, Ex. 27 to White Decl., 11-22-05 E-mail from

Naples to Joanne Zagami Ziniti.)

Naples was originally scheduled to return home on November 20,

2005, but, at Ranbaxy Labs's request, she extended her stay for

approximately four additional weeks.  (See Naples Aff. at ¶ 64;

dkt. entry no. 168-11, Ex. 28 to White Decl., 12-12-05 E-mail from

Naples to Collings.)  She asserts that at least one Ranbaxy Labs

employee told her that she "wouldn [sic] not get the permanent job"

unless she extended her stay, and finished the Ranbaxy Labs

assignment.  (Naples Aff. at ¶ 64.)

Naples fell ill before leaving India, in early December of

2005.  (See 12-12-05 E-mail from Naples to Collings ("I was very

sick last week.  Everything I ate came out both ends of my body!

I was soooooooooo sick!"); Naples Aff. at ¶ 84.)  She stated in an

e-mail dated December 12, 2005, that:

14

> I kept telling them I was sick, but they wouldn't listen
> to me.  Finally, I left work . . . and went back to my
> hotel.  They sent two doctors to give me some medicine.

(12-12-05 E-mail from Naples to Collings; see also Naples Aff. at

¶ 84 ("I requested medicine; however, my coworkers did not believe

that I was sick and did not send medicine until days later.").)

Naples felt better after receiving the medicine, but fell ill again

a few days later, and remained ill until she returned to New

Jersey.  (Naples Aff. at ¶ 84; see also dkt. entry no. 168-11, Ex.

29 to White Decl., 12-16-05 E-mail from Naples to Hannah Hamilton.)

She claims that "the long hours and poor living conditions endured

while in India induced [her] illness."  (Naples Aff. at ¶ 85.)

**G.    Events Following Naples's Return to New Jersey**

Naples returned to New Jersey on or about December 16, 2005.

(See 12-16-05 E-mail from Naples to Hamilton.)  On December 21,

2005, Naples informed a friend that she had received "no word"

about the full-time position at Ranbaxy and had "written off the

job."  (Dkt. entry no. 168-11, Ex. 31 to White Decl., 12-21-05

E-mail from Naples to Hamilton.)

Rebba thereafter informed Naples that the full-time position

was "on hold" and offered her a third six-month term as an

independent contractor.  (Rebba Decl. at ¶ 11; see dkt. entry no.

168-11, Ex. 34 to White Decl., 1-6-06 E-mail from Naples to

Mazumdar.)  Naples asserts that Rebba told her that the full-time

position would soon become available, and that she should not
worry.  (See Tr. of 3-8-11 Naples Dep. at 127-28, 133.)

It appears that Naples thereafter contacted Infotech, and
asked about the possibility of a twelve-month term as an
independent contractor.  (See 1-6-06 E-mail from Naples to
Mazumdar.)  Infotech responded:

> [Bidlur] Shivaprakash, our CEO, has spoken to the client
> and come up with the following feedback:
>
> Client can only provide 6 month contract with good
> possibility of extension after 6 months; . . .
>
> bout [sic] joining them full time, at this stage they
> have ruled out that possibility.

(Dkt. entry no. 168-11, Ex. 35 to White Decl., 1-16-06 E-mail from
Infotech to Naples.)

Naples agreed to extend the Software Services Agreement for
another six months, thus extending her term as an independent
contractor at Ranbaxy until June of 2006.  (See dkt. entry no.
172-1, Ex. F to Sabatini Aff., Third Purchase Order.)  The Third
Purchase Order, like the Second Purchase Order, provides that the
"end Client", Ranbaxy, could terminate the Software Services
Agreement either with or without notice.  (See id.)

**H.    Ranbaxy's Termination of the Software Services Agreement**

Rebba contacted Naples on March 28, 2006, to inform her that
April 21, 2006 would be her "roll-off" date, i.e., the last day

that Naples would serve Ranbaxy as an independent contractor.
(Dkt. entry no. 168-12, Ex. 44 to White Decl., 3-28-06 E-mail from
Rebba to Naples.)  Naples served Ranbaxy until March 31, 2006, and
was ultimately paid through April 21, 2006.  (See dkt. entry no.
168-12, Ex. 45 to White Decl., 3-31-06 E-mail from Rebba to
Shivaprakash; Naples Aff. at ¶ 68; see also dkt. entry no. 159,
8-15-12 Stipulation & Order.)

## I.    Relevant Procedural Posture

The plaintiffs originally brought this action against Infotech
in state court, in Connecticut, on March 18, 2008.  (See dkt. entry
no. 1, Ex. A to Removal Notice, Compl.)  Infotech removed the
action to the United States District Court for the District of
Connecticut ("Connecticut District Court").  (See dkt. entry no. 1,
Removal Notice.)  The plaintiffs thereafter amended the Complaint
to raise claims against Ranbaxy.  (See dkt. entry no. 24, Am.
Compl.)  Approximately ten and a half months had lapsed since the
plaintiffs originally brought the action against Infotech.

Ranbaxy moved before the Connecticut District Court to dismiss
the action for lack of personal jurisdiction.  (See dkt. entry no.
44, Mot. to Dismiss.)  That court agreed that personal jurisdiction
over Ranbaxy was lacking and transferred the action here pursuant
to 28 U.S.C. § 1404(a) to cure the lack of jurisdiction.  (See dkt.
entry no. 71, 12-15-09 Ruling & Order at 1-2, 5-10.)  Once here,

17

the plaintiffs filed the operative pleading, the Second Amended
Complaint.  (See 2d Am. Compl.)

## II.  DISCUSSION

Ranbaxy now moves for summary judgment in its favor and
against the plaintiffs with respect to all of the claims asserted
against it in the Second Amended Complaint.  (See Notice of Ranbaxy
Mot.)  The Court, in the sections that follow, will address general
principles of choice of law analysis.  The Court will then address
the parties' arguments concerning choice of law and substantive
law, on a claim-by-claim basis.

Before addressing those issues, however, it bears noting that
this is Ranbaxy's third motion for summary judgment in the action.
Ranbaxy first moved for such relief in May of 2011.  (See dkt.
entry no. 106, 5-12-11 Notice of Ranbaxy Mot.)  On that date,
Infotech also separately moved for summary judgment.  (See dkt.
entry no. 116, 5-12-11 Notice of Infotech Mot.)  The Court denied
both of those motions without prejudice after concluding that the
parties had, collectively, failed to recognize the need for choice
of law analysis.  (See dkt. entry no. 135, 10-27-11 Order at 5.)[6]

---

[6] The Court, upon review of both defendants' motions and the
related records, found that the claims raised against Ranbaxy and
Infotech shared a common basis in both fact and, to some extent,
law.  Nevertheless, without analysis or explanation, Ranbaxy and
Infotech relied on the laws of different forums, i.e., Connecticut
and New Jersey.  (See 10-27-11 Order at 2.)  This prompted both the
denial of the defendants' motions and the Court's request for
thorough and meaningful briefing on choice of law.  (See id. at 5.)

Ranbaxy moved anew for relief on January 19, 2012.  (See dkt. entry no. 138, 1-19-12 Notice of Ranbaxy Mot.)[7]  The Court again denied Ranbaxy's motion without prejudice, noting that Ranbaxy and the plaintiffs had, despite the Court's earlier instruction, failed to thoroughly analyze the choice of law issues implicated by the claims raised against Ranbaxy.  (See dkt. entry no. 163, 8-17-12 Order.)  See TekDoc Servs., LLC v. 3i-Infotech, No. 09-6573, 2012 WL 3564174, at *1 (D.N.J. Aug. 17, 2012).  The Court suggested in obiter dictum that those claims appeared to implicate the laws of Connecticut, New Jersey, and India.  See TekDoc Servs., 2012 WL 3564174, at *1 n.5, *2-6.  The Court included such dictum in an effort to further the action, as it appeared that the parties would otherwise continue to delay the disposition of the action.  See id. at *1 n.5 (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).

Ranbaxy filed the instant motion on November 26, 2012.  (See Notice of Ranbaxy Mot.)  Upon that motion, both Ranbaxy and the plaintiffs have, for the first time, meaningfully addressed the choice of law and substantive issues relating to each claim raised against Ranbaxy.  The Court is now thus prepared to analyze those claims.

---

[7] Infotech separately filed a new motion for summary judgment. (See 1-17-12 Notice of Infotech Mot.)  As stated in note 1, supra, the Court granted that motion and entered judgment in Infotech's favor on all of the claims raised against it.  (See 8-16-12 Order & J.)  See TekDoc Servs., 2012 WL 3560794.

### A.   Choice of Law Rules

#### 1.   The Court Will Apply New Jersey's Choice of Law Rules to the Claims Raised Against Ranbaxy

The parties dispute which state's choice of law rules govern the claims raised against Ranbaxy: i.e., Connecticut or New Jersey. The Court, for the reasons that follow, will apply New Jersey's choice of law rules.

"In an action based on diversity of citizenship, a federal court generally applies the choice-of-law rules of the jurisdiction in which it sits." Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 170 (3d Cir. 2011) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Thus, if the plaintiffs had originally brought the action here, then this Court would have applied New Jersey's choice of law rules.  See id.  (See 2d Am. Compl. at ¶¶ 1, 6 (demonstrating that the Court should deem both Naples and TekDoc to be citizens of Connecticut and asserting jurisdiction pursuant to 28 U.S.C. § 1332); Ranbaxy SOF at ¶ 3 (demonstrating that the Court should deem Ranbaxy to be a citizen of both Delaware and New Jersey); Pls.' Response to Ranbaxy SOF at ¶ 3 (same).)  See also Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (A "corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business", and "the citizenship of a limited liability company . . . is determined by the citizenship of each of its members.").

An exception to this rule lies when an action is transferred from one district court to another pursuant to Section 1404(a). Section 1404(a) grants district courts discretion to transfer an action to another district for the convenience of the parties and in the interests of justice.  See 28 U.S.C. § 1404(a); Lafferty v. St. Riel, 495 F.3d 72, 76-77 (3d Cir. 2007).  In that circumstance, the transferee court applies the transferor forum's choice of law rules.  See Amica, 656 F.3d at 171.  Thus, if the Connecticut District Court had transferred the action here for the convenience of the parties and in the interests of justice, then this Court would have applied Connecticut's choice of law rules.  See id.

The 12-15-09 Ruling & Order demonstrates, however, that the Connecticut District Court did not transfer the action for those reasons.  Indeed, that court did not consider the factors normally implicated by such a transfer.  See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010); Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995).  Instead, the Connecticut District Court transferred the action to cure the lack of personal jurisdiction over Ranbaxy that existed in that court. (See 12-15-09 Ruling & Order at 1-2, 9-10.)[8]

---

[8] Such transfer was proper under Section 1404(a) under the law binding the Connecticut District Court.  See, e.g., SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172, 179 n.9 (2d Cir. 2000) (noting that Section 1404(a) grants district courts authority to cure lack of personal jurisdiction by transferring an action to a district court that may exercise such jurisdiction).

21

The plaintiffs argue that the Connecticut District Court transferred the action here pursuant to Section 1404(a), and that this Court must, pursuant to <u>Lafferty</u>, apply Connecticut's choice of law rules.  (<u>See</u> Opp'n Br. at 21.)[9]  In <u>Lafferty</u>, the United States Court of Appeals for the Third Circuit ("Third Circuit") stated that distinctions between Section 1404(a) and 28 U.S.C. § 1406(a) ("Section 1406(a)") concern "discretion, jurisdiction, and choice of law." 495 F.3d at 76.  The Third Circuit explained:

> Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum. . . . Section 1406(a) comes into play where plaintiffs file suit in an improper forum.  In those instances, district courts are required either to dismiss or transfer to a proper forum. . . .  When cases have been transferred for improper venue, transferee courts generally apply the substantive law they would have applied had the action been brought there initially.

<u>Id.</u> at 76-77 (citations omitted).

The Court has carefully considered the plaintiffs' argument, but concludes that their argument improperly emphasizes form over substance.  It is undeniable that the Connecticut District Court made a passing reference to Section 1404(a).  (<u>See</u> 12-15-09 Ruling & Order at 1.)  But that Court spent considerable time justifying

---

[9] Where application of Connecticut's choice of law rules would automatically result in dismissal of one of the plaintiffs' claims, pursuant to an applicable statute of limitations, the plaintiffs have deemed fit to argue that New Jersey's choice of law rules should govern the action.  (See Opp'n Br. at 54 n.12, 54-58.)

its conclusion that it was an improper forum for the action, and demonstrating why the action should be transferred to this Court. (See id. at 1-2, 5-10.)  Indeed, it appears that the Connecticut District Court, if it had been bound by Lafferty, would have transferred the action pursuant to Section 1406(a).[10]

The rationale underlying the Connecticut District Court's transfer thus controls this Court's application of choice of law rules. Because the Connecticut District Court transferred the action to cure a lack of personal jurisdiction over Ranbaxy -- despite its passing reference to Section 1404(a) -- this Court cannot apply the transferor forum's choice of law rules.  See Reyno v. Piper Aircraft Co., 630 F.2d 149, 164-65 (3d Cir. 1980) (reasoning that where a state's "exercise of jurisdiction over [a defendant] would violate due process, so would application of that state's choice of law rules"), rev'd on other grounds, 454 U.S. 235 (1981); Peckenpaugh v. Cargill, Inc., No. 84-721, 1986 WL 15610, at *2 (D. Del. June 30, 1986).  This Court, accordingly, must apply the choice of law rules of the transferee forum, New Jersey.  See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp., 692 F.3d 405, 408 n.3 (5th Cir. 2012) (citations omitted) ("The choice-of-law rules of the transferee state apply if a

---

[10]  Insofar as Lafferty announced that transfer under Section 1406(a) is the proper mechanism for transfer to cure lack of personal jurisdiction, that case conflicts with the law of the United States Court of Appeals for the Second Circuit, which binds the Connecticut District Court.  See SongByrd, 206 F.3d at 179 n.9.

diversity suit was transferred from a district court that had no personal jurisdiction over the defendant or where venue was otherwise improper."); <u>SongByrd</u>, 206 F.3d at 180; <u>Peckenpaugh</u>, 1986 WL 15610 at *2.[11]

Under New Jersey law, where "a choice-of-law determination is necessary, it is made on an issue-by-issue basis". <u>Cornett v. Johnson & Johnson</u>, 211 N.J. 362, 374 (2012) (citation omitted). Such determinations "may result in the application of the law of more than one [forum] to the several claims in a matter." <u>Id.</u> (citation omitted). Of course, "choice of law is not an issue unless there is a real conflict between the law of" those forums. <u>Id.</u> (citation omitted); <u>see also</u> <u>P.V. ex rel T.V. v. Camp Jaycee</u>, 197 N.J. 132, 143-44 (2008) (demonstrating that an "actual conflict" exists where application of one forum's laws over another would be outcome determinative).

---

[11] The Court applied Connecticut's choice of law rules when resolving Infotech's motion for summary judgment. <u>See</u> <u>TekDoc Servs.</u>, 2012 WL 3560794, at *8-12. The application of those rules did not violate Infotech's due process rights because Infotech, unlike Ranbaxy, consented to the Connecticut District Court's exercise of personal jurisdiction. (<u>See, e.g.</u>, dkt. entry no. 25, Infotech Answer to Am. Compl.) <u>See</u> Fed.R.Civ.P. 12(h)(1); <u>Neifeld v. Steinberg</u>, 438 F.2d 423, 428 n.11 (3d Cir. 1971).

The Court notes, with respect to the resolution of Infotech's motion for summary judgment, that both Infotech and the plaintiffs impliedly consented to the application of Connecticut's choice of law rules by basing their respective briefs on those rules. (<u>See</u> dkt. entry no. 137, Br. in Supp. of Infotech Mot. at 7; dkt. entry no. 149, Opp'n to Infotech Mot. at 13.) Neither Infotech nor the plaintiffs argued that the Court should apply New Jersey's choice of law rules when resolving that motion.

The Court will thus examine the claims raised against Ranbaxy and, on a claim-by-claim basis, determine which forum's law governs each claim.  Where Ranbaxy and the plaintiffs agree that a forum's law governs a claim, and thus consent to the application of that forum's law, the Court will not further analyze the choice of law issues relating to that claim.[12]  Otherwise, the Court will engage in a three-step analysis.  First, based on the facts underlying each claim, the Court will determine which forums have an interest in the resolution of that claim.  Second, the Court will determine whether an actual conflict exists by determining whether a choice of law determination would be outcome determinative.  See Camp Jaycee, 197 N.J. at 143.  Third, where an actual conflict exists, the Court will apply New Jersey's choice of law rules to determine which forum's law governs the claim.

> **2.    New Jersey's Choice of Law Rules**
>
> > **a.    Choice of Law Rules Concerning the Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

New Jersey courts resolve choice of law issues relating to breach of contract claims by determining which forum has the most

---

[12] Where parties' briefs assume that a particular forum's law controls, "such 'implied consent . . . is sufficient to establish choice of law.'"  Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (quoting Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)); see also Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566-67 (2d Cir. 2011); 1A C.J.S. Actions § 49 (2013).

significant relationship with both the parties and the contract.
See Jackson v. Midland Funding LLC, 468 Fed.Appx. 123, 126-27 (3d
Cir. 2012); Forestal Guarani S.A. v. Daros Int'l, Inc., 613 F.3d
395, 401 (3d Cir. 2010); State Farm Mut. Auto. Ins. Co. v. Estate
of Simmons, 84 N.J. 28, 34-37 (1980).  It appears that they would
similarly resolve choice of law issues in an action concerning a
breach of the implied covenant of good faith and fair dealing.  See
Wilson v. Amerada Hess Corp., 168 N.J. 236, 244-47 (2001)
(demonstrating that implied contractual covenants, like express
contractual covenants, arise from and relate to parties' contract).
After all, "[t]he implied covenant of good faith and fair dealing
is used to measure a party's performance under a contract", and,
"[t]hus, a breach of the implied covenant [of good faith and fair
dealing] may give rise to a cause of action for damages for breach
of contract".  1266 Apartment Corp. v. New Horizon Deli, Inc., 368
N.J. Super. 456, 461 (App. Div. 2004).

The New Jersey Supreme Court has adopted the principles set
forth in the Restatement (Second) of Conflicts of Laws, at Section
188 (respectively, "the Restatement" and "Section 188") to resolve
such choice of law issues.  See, e.g., Jackson, 468 Fed.Appx. at
126.  Section 188 generally instructs courts to consider the
parties' contacts with each forum, with particular importance paid
to the: (1) place of contracting; (2) place of negotiation of the

contract; (3) place of performance; (4) location of the subject
matter of the contract; and (5) domicil, residence, nationality,
place of incorporation, and place of business of the parties.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2).  "These contacts are to
be evaluated according to their relative importance with respect to
the particular issue."  Id.; see also Camp Jaycee, 197 N.J. at 143
(noting that assessment of factors articulated by the Restatement
should be "qualitative, not quantitative").

   While Section 188 generally provides the choice of law rule
relevant to a breach of contract action, sections 189 through 199,
and 203, of the Restatement provide guidance in applying the
general rule to specific types of contracts.  Section 196 of the
Restatement ("Section 196") is relevant to the action.  It provides
that the validity of and rights created by a contract for the
rendition of services should be determined "by the local law of the
state where the contract requires that the services, or a major
portion of the services, be rendered, unless, with respect to the
particular issue, some other state has a more significant
relationship . . . to the transaction and the parties."  RESTATEMENT
(SECOND) OF CONFLICT OF LAWS § 196.

   Although Section 196 has not been explicitly adopted by New
Jersey courts, this Court believes that the New Jersey Supreme
Court would, if presented with the proper action, adopt and apply

it.  Section 196 accords with the long-held understanding of New
Jersey law, which presumes that parties, in the absence of an
effective choice of law provision, "contract with reference to the
law of the [forum] in which the contract is to be performed."
Mullaly v. Carlisle Chem. Works, Inc., 177 F.Supp. 588, 592 (D.N.J.
1959).  Furthermore, at least one New Jersey Appellate Division
panel has recognized that section's general applicability.  See
McCabe v. Great Pac. Century Corp., 222 N.J. Super 397, 400 (App.
Div. 1998) (recognizing section 196 of the Restatement, which
applies to contracts for the rendition of services).  And New
Jersey courts have adopted other, related sections of the
Restatement.  See Gilbert Spruance Co. v. Pa. Mfrs.' Ass'n Ins.
Co., 134 N.J. 96, 103-04 (adopting section 193 of the Restatement,
insofar as it applies to casualty insurance contracts); Keil v.
Nat'l Westminster Bank, Inc., 311 N.J. Super. 473, 486 (App. Div.
1998) (taking guidance from section 195 of the Restatement, which
concerns contracts for the repayment of loans); Gamino v. Gen. Am.
Life Ins. Co., 288 N.J. Super. 125, 132 n.1 (App. Div. 1996); see
also Nafar v. Hollywood Tanning Sys., Inc., 339 Fed.Appx. 216, 220
(3d Cir. 2009) (Under New Jersey law, the "second prong of the most
significant relationship test requires the Court to weigh the
factors enumerated in the Restatement section corresponding to the
plaintiffs' cause of action.")

   b.   **Choice of Law Rules Concerning the Claims for Misrepresentation, Fraud, and Negligent Infliction of Emotion Distress**

The New Jersey Supreme Court has also adopted sections of the Restatement concerning resolution of choice of law issues relating to tort claims.  See Camp Jaycee, 197 N.J. at 141-43, 144-47 (analyzing and applying the factors and presumptions set forth in sections 145, 146, and 148 of the Restatement).  Those sections, like the sections concerning claims for breach of contract, announce a "most significant relationship" standard.  See id.; RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 145, 146, 148.  As applied to tort claims, the most significant relationship standard measures each forum's relationship with "the occurrence and the parties".  Camp Jaycee, 197 N.J. at 145 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146).

Section 145 of the Restatement ("Section 145") provides that parties' rights and liabilities are determined by the forum that, with respect to a particular claim, "has the most significant relationship to the occurrence and the parties".  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1).  Generally, and pursuant to the New Jersey Supreme Court's interpretation of the Restatement, the law of the forum where the plaintiff's injury occurred applies unless some other forum has a more significant relationship to the occurrence and the parties.  See Camp Jaycee, 197 N.J. at 143; cf.

29

RESTATEMENT (SECOND) CONFLICT OF LAWS § 156(2) ("The applicable law will usually be the local law of the state where the injury occurred.") To determine the significance of each forum's relationship, courts should consider the strength of each forum's contacts with the: (1) place where the injury occurred; (2) place where the conduct causing the injury occurred; (3) domicil, residence, nationality, place of incorporation, and place of business of the parties; and (4) place where the parties' relationship, if any such relationship exists, is centered. RESTATEMENT (SECOND) CONFLICT OF LAWS at § 145(2); see Camp Jaycee, 197 N.J. at 145-47. These contacts, like the contacts considered in choice of law analyses concerning breach of contract claims, are also "to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) CONFLICT OF LAWS § 145(2); see also Camp Jaycee, 197 N.J. at 143 (noting that assessment of factors articulated by the Restatement should be "qualitative, not quantitative").

While Section 145 generally provides the choice of law rule relevant to a tort action, section 148 of the Restatement ("Section 148") provides guidance in applying the general rule to claims for fraud or misrepresentation. Specifically, Section 148 provides two rules. The first applies where the defendant's allegedly tortious conduct and the plaintiff's reliance thereon all arise in a single forum. See RESTATEMENT (SECOND) CONFLICT OF LAWS § 148(1). In that set

of circumstances, Section 148 presumes the application of that forum's law.  See id. § 148 cmt. d ("The state selected by application of the rule of Subsection (1) will usually be the state of dominant interest, since the two principal elements of the tort, namely, conduct and loss, occurred within its territory."); see also Beegal v. Park W. Gallery, 394 N.J. Super. 98, 123 (App. Div. 2007) (recognizing this principle).  The second rule applies where the "plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made and received".  Id. at § 148(2).  In that set of circumstances, to determine which forum has the most significant relationship with the occurrence and parties, the Court should consider:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

31

Id. § 148(2).  New Jersey courts recognize the "general approach" that the law of the forum where a plaintiff acts in reliance on a defendant's representations will usually apply.  Kennedy v. Unlimited Imports Inc., No. A-5906-05T2, 2007 WL 135951, at *4 (N.J. App. Div. Jan. 22, 2007) (citing RESTATEMENT (SECOND) CONFLICT OF LAWS § 148 cmt. j).  New Jersey courts also recognize that "[t]he place of injury is less significant in a fraud action than in a personal injury action."  Beegal, 394 N.J. Super. at 122 (citing RESTATEMENT (SECOND) CONFLICT OF LAWS § 145(2) cmt. f).

### c.    Choice of Law and Statutes of Limitations

The plaintiffs argue, by reference to an unpublished Connecticut trial court opinion discussing statutes of repose, that "statutes of limitation [sic] can be treated as either substantive law or procedural law depending on the cause of action".  (Opp'n Br. at 39 (citing Moore v. Arvin Indus., Inc., No. 085018503S, 2011 WL 6413827, at *2 (Conn. Super. Ct. Dec. 2, 2011)).)  However, the relevance of the plaintiffs' argument rests on the assumption that Connecticut's choice of law rules govern the resolution of the claims raised against Ranbaxy.  For the reasons already discussed, this is a faulty assumption.

Because New Jersey's choice of law rules govern the resolution of the claims raised against Ranbaxy, we turn to that state's courts for instruction.

> In <u>Heavner v. Uniroyal, Inc.</u>, 63 N.J. 130, 135–42, 305
> A.2d 412 (1973), [the New Jersey Supreme] Court rejected
> the rule that the statute of limitations of the forum
> state automatically applies.  The Court held a New
> Jersey court will apply the statute of limitations of
> another state, if that state has a greater interest in
> the litigation.  <u>Id.</u> at 140–41, 305 A.2d 412.  In <u>Gantes
> v. Kason Corp.</u>, 145 N.J. 478, 484, 679 A.2d 106 (1996),
> this Court held that when this state and another state
> have conflicting statutes of limitations, we apply the
> same [choice of law] test governing choice of
> substantive law.

<u>Cornett</u>, 211 N.J. at 373-74; <u>see also</u> <u>O'Boyle v. Braverman</u>, 337

Fed.Appx. 162, 166 (3d Cir. 2009); <u>Warriner v. Stanton</u>, 475 F.3d

497, 500 n.2 (3d Cir. 2007).  Accordingly, where this Court's

choice of law analysis reveals an actual conflict between two or

more forums' statutes of limitations -- when it appears that one

forum's statute of limitations would allow a claim to proceed,

whereas another would defeat it -- this Court will apply the same

choice of law rules as it would have applied if it were determining

which forum's substantive law would govern resolution of that claim

on the merits.  <u>See</u> <u>Cornett</u>, 211 N.J. at 373-74; <u>see also</u> <u>Ghaffari

v. Hern</u>, No. 06-931, 2009 WL 2147092, at *4 (D.N.J. July 15, 2009)

(resolving conflict between New Jersey's and Florida's statutes of

limitations by reference to New Jersey's choice of law rules).

**B.   Analysis of the Claims Raised Against Ranbaxy**

    **1.   The Summary Judgment Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact, and is thus entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  The Court will grant a motion for summary judgment when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party", and a fact is "material" if it might affect the outcome of the suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court will not deny a motion for summary judgment unless the non-moving party has produced at least some evidence in support of each material fact.  See Fed.R.Civ.P. 56(c)(1)(A).  The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Neither speculation and conjecture, nor inferences drawn on the same, will defeat a motion for summary judgment.  See Kovalev v.

<u>City of Phila.</u>, 362 Fed.Appx. 330, 331 (3d Cir. 2010); <u>Robertson v.</u>
<u>Allied Signal, Inc.</u>, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

### 2. The Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

The claims for breach of contract and breach of the covenant of good faith and fair dealing, insofar as they are viable, are premised on two sets of allegations.[13]  First, the plaintiffs claim that Ranbaxy breached an oral contract to convert Naples from an independent contractor to a full-time Ranbaxy employee.  (<u>See</u> 2d Am. Compl. at Ninth Count, ¶ 15(c); <u>see also</u> Br. in Supp. at 36; Opp'n Br. at 23, 41.)  Second, they claim that Ranbaxy breached a separate contract relating to the Naples's assignment in India, by failing to inform Naples of, or respond to or otherwise properly redress her complaints about the living and working conditions in India.  (<u>See</u> 2d Am. Compl. at Ninth Count, ¶ 15(a), (d)-(r); <u>see also</u> Br. in Supp. at 36; Opp'n Br. at 23, 41, 62.)[14]  Because those

---

[13] These claims are no longer viable insofar as they concern Ranbaxy's alleged failure to properly remit certain payments because Ranbaxy and the plaintiffs have reached a settlement on that issue.  (<u>See</u> 8-15-12 Stipulation & Order; 2d Am. Compl. at Ninth Count, ¶ 15(b), (s)-(t) and Twelfth Count, ¶¶ 26-27.)

[14] The claim for breach of the implied covenant of good faith and fair dealing is, as discussed above, a claim for breach of contract.  <u>See</u> <u>Wilson</u>, 168 N.J. at 244-47; <u>1266 Apartment Corp.</u>, 368 N.J. Super. at 461.  Because that claim is premised on the same allegations as the claim for breach of contract, and because that claim is, effectively, duplicative of the claim for breach of contract, the Court will resolve both claims together and refer to them as "the breach of contract claims".

allegations are factually distinct, the Court will separately address them.

### a.   The Contract for Permanent Employment

Both Ranbaxy and the plaintiffs agree that the breach of contract claims, insofar as they concern the alleged contract for full-time employment at Ranbaxy, are governed by New Jersey law. (See Br. in Supp. at 36-40 (applying New Jersey law to the First Breach of Contract Claim); Opp'n Br. at 24, 41, 42-46 (same).)  The Court will thus apply New Jersey law to those claims.  See Fed. Ins. Co., 639 F.3d at 566-67; Krumme, 238 F.3d at 138.

Ranbaxy does not concede that it contracted to provide Naples with full-time employment.  (See Br. in Supp. at 37 (arguing that such a finding is "a fact that is not supported by the evidence").)  Nevertheless, the Ranbaxy Motion is ripe for summary judgment.  Even assuming arguendo that such a contract existed, the plaintiffs cannot carry the burden of proof with respect to an essential element of each of those claims: a breach of contract.  See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F.Supp.2d 543, 566 (D.N.J. 2002) (reciting elements of a New Jersey breach of contract claim).

"'In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine.  An employment relationship remains terminable at

the will of either an employer or employee, unless an agreement exists that provides otherwise.'" <u>Wade v. Kessler Inst.</u>, 172 N.J. 327, 338 (2002) (quoting <u>Witkowski v. Thomas J. Lipton, Inc.</u>, 136 N.J. 546, 552 (1994)); <u>see</u> <u>Velantzas v. Colgate-Palmolive Co., Inc.</u>, 109 N.J. 189, 191 (1988) ("An employer can fire an at-will employee for no specific reason or simply because an employee is bothering the boss.")  "Today, both employers and employees commonly and reasonably expect employment to be at-will, unless specifically stated in explicit, contractual terms." <u>Bernard v. IMI Sys., Inc.</u>, 131 N.J. 91, 106 (1993).[15]

The Court has carefully reviewed and considered the record. It is bereft of evidence demonstrating that the alleged contract for full-time employment -- or, as the plaintiffs have often described it, "permanent" employment -- was for anything other than at-will employment.  In the absence of such evidence, the Court concludes that the alleged contract, if it existed, was merely for at-will employment. <u>See</u> <u>id.</u>  Accordingly, Ranbaxy was free to terminate that contract at any time, even pre-employment, without

---

[15] New Jersey courts recognize exceptions to the employment-at-will doctrine. <u>See</u> <u>Wade</u>, 172. N.J. at 338-39; <u>Witkowski</u>, 136 N.J. 552-53; <u>Velantzas</u>, 109 N.J. at 191-92.  But the plaintiffs have not argued that any of those exceptions apply here, and the Court will not create such arguments on their behalf. <u>See</u> <u>Perkins v. City of Elizabeth</u>, 412 Fed.Appx. 554, 555 (3d Cir. 2011) ("[A] court is not obligated to scour the record to find evidence that will support a party's claims. . . .  Courts cannot become advocates for a party by doing for that party what the party ought to have done for him or herself.").

liability for breach of contract.  See <u>Velantzas</u>, 109 N.J. at 191;
<u>see also</u> <u>Martin v. Port Auth. Transit Corp.</u>, No. 09-3165, 2010 WL
1257730, at *5 (D.N.J. Mar. 25, 2010) (employer may rescind an
offer for or terminate a contract for at-will employment freely,
and without incurring liability for breach of contract).

The plaintiffs raise two arguments to shield Naples from the
consequences of the employment-at-will doctrine.  First, they argue
that Naples was not an at-will employee who could be terminated at
any time because she was merely "a temporary employee with a
promise to be made a full-time, permanent employee."  (Opp'n Br. at
44.)  This argument misplaces temporal emphasis; it improperly asks
the Court to consider Naples's status as "a temporary employee",
i.e., an independent contractor, when the alleged contract was
formed.  Her status at formation is irrelevant.  Instead, the
status created by the alleged contract -- her potential status as
"a full-time, permanent" employee -- guides the Court.[16]

The plaintiffs next argue that Naples should not be treated as
an at-will employee because, by accepting the assignment in India,
she provided additional consideration for the promise of
"permanent" employment.  (<u>See</u> Opp'n Br. at 45.)  They contend by

---

[16] Even if the Court accepted Naples's premise and treated her
as a "temporary employee", the Court would reach the same result.
Under the contract that controlled Naples's term as an independent
contractor, the Software Services Agreement, Ranbaxy enjoyed the
right to terminate the parties' relationship at any time, and for
any reason, with or without notice.  (<u>See</u> Third Purchase Order.)

reference to a New Jersey trial court case that "where additional consideration is given, an employee is not classified as an at-will employee, but rather can be terminated only for just cause." (Id. (citing Alter Resorts Int'l, Inc., 234 N.J. Super. 409, 416 (Ch. Div. 1989).)

The Court acknowledges that New Jersey courts have, in some limited contexts, approved contracts for "permanent" employment. But those contracts differ in kind from the alleged contract that is here at issue. As noted above, Naples "believed a permanent position to mean that [she] would be made a full-time employee, rather than a temporary employee". (Naples Aff. at ¶ 7.) She did not, by contrast to the New Jersey cases that discuss permanent employment, believe that Ranbaxy would offer her a contract for lifetime employment. (See id.; Tr. of 10-27-08 Naples Dep. at 55 (showing that Naples understood the possible "permanent assignment" to constitute "full-time", not lifetime, employment at Ranbaxy).) But cf. Fregara v. Jet Aviation Bus. Jets, 764 F.Supp. 940, 942 (D.N.J. 1991) (discussing an alleged contract for lifetime employment); Savarese v. Pyrene Mfg. Co., 9 N.J. 595, 597 (1952) (discussing an alleged promise for "a foreman's job for the rest of [the plaintiff's] life"); Alter, 234 N.J. Super. at 416 (discussing "lifetime contracts"). Because the "permanent" employment at issue here differs fundamentally from that discussed and in Fregara,

39

<u>Savarese</u>, and <u>Alter</u>, and because the plaintiffs have failed to cite any authority that would otherwise support their argument, the Court has concluded that this argument lacks merit.

**b.   The Contract Relating to the Living and Working Conditions in India**

The second aspect of the breach of contract claims concerns Naples's assignment at Ranbaxy Labs, in India, and Ranbaxy's related responsibilities.  The plaintiffs seek relief for Ranbaxy's alleged failure to inform Naples of, or respond to or otherwise properly redress her complaints about the living and working conditions in that country.  (<u>See</u> 2d Am. Compl. at Ninth Count ¶ 15(a), (d)-(r); <u>see also</u> Br. in Supp. at 36; Opp'n Br. at 23, 41.)

Ranbaxy contends, by reference to well-reasoned choice of law analysis, that this aspect of the breach of contract claims should be governed by the law of India.  (<u>See</u> Br. in Supp. at 43-44.)  The plaintiffs, by contrast, do not set forth a cogent choice of law analysis.  They instead suggest that this aspect of the breach of contract claims might be governed by the laws of either New Jersey or India.  (<u>See</u> Opp'n Br. at 40 ("[E]ither New Jersey or India has the most significant relationship with [the] plaintiffs' breach of contract claims for Naples' [sic] services in India."); <u>id.</u> at 46-50 (presenting substantive argument by reference to cases interpreting New Jersey law).  But <u>see</u> <u>id.</u> at 47 (asserting without

further explanation "that the outcome of the most significant
relationship test for all of plaintiffs' claims, including breach
of contract ends up being New Jersey").)  Because Ranbaxy and the
plaintiffs have put the laws of both India and New Jersey at issue,
the Court must consider whether an actual conflict arises from the
application of those laws.  See Camp Jaycee, 197 N.J. at 143.

Such conflict arises from the application of each forum's
statute of limitations to this aspect of the breach of contract
claims, which is rooted in facts dating back to October, November,
and December of 2005.  Rebba first approached Naples about the
assignment in India in October of 2005, and discussed the terms of
that assignment with her.  (See Rebba Decl. at ¶ 8; 10-24-05 Letter
from Walia to Naples; Tr. of Rebba Dep. at 114-15.)  Those terms
included Ranbaxy's agreement to provide Naples with certain
services in India, including lodging, transportation from the
airport, and daily transportation between her lodging and Ranbaxy
Labs.  (See Naples Aff. at ¶¶ 25, 27-28, 31, 39, 42; Rebba Decl. at
¶ 8; Tr. of 1-27-08 Naples Dep. at 93; Tr. of Rebba Dep. at 121-24,
134-36; 10-28-05 E-mail Chain Between Naples, Rebba, and Mazumdar.)
Naples then traveled to India, where she lived and worked until
returning to New Jersey on or about December 16, 2005.  (See
12-16-05 E-mail from Naples to Hamilton (indicating that Naples
left India on or about 12-16-05).)

The plaintiffs did not bring suit against Ranbaxy until February 4, 2009, more than three years after Naples returned from India.  (See dkt. entry no. 24, Am. Compl.)  Accordingly, the action, insofar as it is brought against Ranbaxy, is timely under New Jersey law but time-barred by the law of India; New Jersey provides a six-year statute of limitations for recovery for breach of contract, whereas India provides only a three-year statute of limitations.  Compare N.J.S.A. § 2A:14-1 ("Every action at law . . . for recovery upon a contractual claim or liability, express or implied, . . . shall be commenced within 6 years next after the cause of any such action shall have accrued."), with The Limitation Act, No. 36 of 1963, INDIA CODE, available at http://indiacode.nic.in (click "Short Title", enter the words "Limitation Act", and click the "Submit" button) [hereinafter "Limitation Act"].[17]  The Schedule attached to the Limitation Act expressly provides a three year limitations period for actions "[f]or compensation for the breach of any contract", which begins to run "[w]hen the contract is broken".  See Limitation Act, at Schedule, First Div., Pt. II, No. 55; see also Limitation Act at § 21 ("Where after the institution of a suit, a new plaintiff or defendant is substituted

---

[17] This website is the official website of the India Code, as maintained by the government of India.  See Nat'l Portal of India, http://india.gov.in/topics/law-justice/enactment-laws (last visited May 20, 2013) (describing the hyperlink appearing in the text of this memorandum opinion as the "Official website of India Code", which "contains all the Central legislations").

or added, the suit shall, as regards him, be deemed to have been instituted when he was so made a party.")

Because these forums present an actual conflict of laws, the Court has examined the record to determine which forum, as between them, has the most significant relationship with the parties and contract at issue. See Jackson, 468 Fed.Appx. at 126-27; Cornett, 211 N.J. at 373-74. Following careful consideration of the record, the Court concludes that India has that relationship.

The Court acknowledges that New Jersey has at least some contacts with both Ranbaxy and the plaintiffs, who negotiated and formed the contract at issue in New Jersey, in October of 2005. (See Rebba Decl. at ¶ 8; Tr. of Rebba Dep. at 114-15; 10-24-05 Letter from Walia to Naples.) See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2)(a)-(b). The Court also acknowledges that Ranbaxy maintains its principal place of business in New Jersey. (See Ranbaxy SOF at ¶ 3; Pls.' Response to Ranbaxy SOF at ¶ 3.) See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2)(e).

The Court nevertheless concludes that India has the most significant relationship with the parties and the contract at issue. See Camp Jaycee, 197 N.J. at 143 (instructing courts to consider the quality, rather than the quantity, of contacts with a given forum); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2). The contract at issue called for both Ranbaxy and the plaintiffs to

43

render services in India.  Accordingly, the Restatement instructs the Court to presume that India's law should control any claims arising from that contract.  See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 196 (instructing that choice of law issues should be resolved "by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered . . . ."). RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 196.  The contract at issue required the plaintiffs to render services for Ranbaxy in India, and required Ranbaxy to provide Naples with lodging in India, to provide Naples with local transportation in India, and, to provide generally acceptable living and working conditions in India.  (See Rebba Decl. at ¶ 8; 10-24-05 Letter from Walia to Naples; Tr. of 10-27-08 Naples Dep. at 96; see also Opp'n Br. at 48-49 (recognizing same).)  Those contacts are central to this aspect of the breach of contract claims.

The Court's conclusion regarding the application of the law of India is further buttressed by Ranbaxy's and the plaintiffs' other contacts with India.  Nearly all of the plaintiffs' complaints, insofar as they arise from this aspect of the breach of contract claims, recognize India as the forum where Ranbaxy allegedly failed to provide services.  (See Tr. of 10-27-08 Naples Dep. at 96, 122-23; Tr. of 3-8-11 Naples Dep. at 72; Naples Aff. at ¶¶ 29-31, 34-39, 51-52, 55-60, 84-85; 11-1-05 E-mail from Naples to

Pitcherello; 11-2-05 E-mail from Naples to Pitcherello; 11-17-05
E-mail from Naples to Rebba; 12-12-05 E-mail from Naples to
Collings; 12-16-05 E-mail from Naples to Hamilton; see also 2d Am.
Compl. at Ninth Count, ¶ 15(d)-(r).)  See RESTATEMENT (SECOND) CONFLICT
OF LAWS § 188(c).  Similarly, to the extent that the plaintiffs
suffered damages, such damages were felt in India.  (See Tr. of
10-27-08 Naples Dep. at 96-99 (discussing damages relating to lack
of transportation); Naples Aff. ¶¶ 29-30, 51-52, 84-85 (discussing
issues arising from the living and working conditions in India);
11-2-05 E-mail from Naples to Pitcherello (describing living
conditions); 11-17-05 E-mail from Naples to Jezewski (same);
12-16-05 E-mail from Naples to Hamilton (describing Naples's
illness, which allegedly arose from Naples's living and working
conditions and began affecting her while she was in India).)

    Because the Court concludes that India has the most
significant relationship with the parties and the contract at
issue, it follows that India has the greatest interest in applying
its law, including its statute of limitations.  Cf. Jackson v.
Midland Funding, LLC, 754 F.Supp.2d 711, 716 (D.N.J. 2010), aff'd,
468 Fed.Appx. 123 (applying Pennsylvania's statute of limitations
after determining that Pennsylvania had the greater relationship
with the parties and contract at issue, and the greater interest in
having its law applied to claims involving those parties and that

contract).  Accordingly, the second aspect of the breach of
contract claims is time-barred.

### 3.   The Claim for Unjust Enrichment

The plaintiffs, through the claim for unjust enrichment, now
seek "the value of services performed for and on behalf of Ranbaxy
for their benefit for which [TekDoc] has not been compensated".
(See id. at Eleventh Count, ¶ 24.)  It appears that this claim was
settled, insofar as it concerned Ranbaxy's alleged failure to
properly remit certain payments to TekDoc.  (See 8-15-12
Stipulation & Order (noting settlement of claims relating to "comp
time" and travel expenses).)  But the plaintiffs now argue that
"Ranbaxy still owes additional amounts to plaintiffs", and purport
to "make[] a claim for work development that Ranbaxy benefits from
although Naples had to endure deplorable living and working
conditions, and being treated [sic] like a prisoner and slave while
providing this benefit."  (Opp'n Br. at 54 (citations to record
omitted).)

The Court finds two issues with this argument.  First, it
appears that the plaintiffs neither made a claim for such "work
development" in the Second Amended Complaint, nor otherwise
demanded as much from Ranbaxy during the course of litigation.
(See 2d Am. Compl. at Eleventh Count; dkt. entry no. 172-2, Ex. W
to Sabatini Aff., Summary of Naples's Losses.)  The Court will not

allow the plaintiffs to effectively amend their pleading at this late stage.  See Warfield v. SEPTA, 460 Fed.Appx. 127, 132 (3d Cir. 2012) ("A plaintiff may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment."); Torske v. DVA Health & Nutrition GmbH, No. 11-3609, 2013 WL 1848120, at *5 (D.N.J. Apr. 30, 2013) (citation omitted) ("[I]t is axiomatic that a plaintiff may not amend his complaint through later briefing[.]")

Second, even if the Court considered the merits of this claim, and did so, as the plaintiffs urge, under New Jersey law (see Opp'n Br. at 54-55), the Court would nonetheless conclude that this claim is untenable.  "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.  The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) (emphasis added) (citations omitted).

The plaintiffs do not claim that Ranbaxy received a benefit without payment.  They instead attempt to breathe life into an otherwise settled claim for unjust enrichment by shoehorning facts

that support time-barred breach of contract and, as discussed
below, tort claims.  Thus, the Court will not allow this claim to
remain viable.

### 4.   The Claim for Innocent Misrepresentation

The plaintiffs have raised a claim against Ranbaxy for
innocent misrepresentation.  (See 2d Am. Compl. at Fourteenth
Count.)  The Court, when resolving Infotech's motion for summary
judgment, earlier concluded that New Jersey does not recognize such
a cause of action.  See TekDoc Servs., 2012 WL 3560794, at *11.

The plaintiffs now "concede that said claim does not exist in
. . . New Jersey and hereby abandon their claim for innocent
misrepresentation."  (Opp'n Br. at 58.)  Because the plaintiffs
have expressly withdrawn that claim, the Court will not further
address it.

### 5.   The Claim for Negligent Infliction of Emotional Distress

The parties have argued the merits of the claim for negligent
infliction of emotional distress ("NIED") under the laws of both
India and New Jersey.  (See Br. in Supp. at 64-67; Opp'n Br. at
58-59.)  The Court, accordingly, must determine whether the
application of one forum's law over the other would present an
actual conflict.  See Camp Jaycee, 197 N.J. at 143.

The laws of India and New Jersey conflict, insofar as New
Jersey provides a two-year limitations period for claims for

48

negligent infliction of emotional distress, and India provides only a one-year limitations period for such claims.  Compare N.J.S.A. § 2A:14-2 and Carino v. O'Malley, No. 05-5814, 2007 WL 951953, at *9 (D.N.J. Mar. 28, 2007), with The Limitation Act at Schedule, First Div., Pt. VII, No. 79 (providing a one-year limitations period, that accrues from "[t]he date of the distress", to any claim for "compensation for . . . illegal, irregular, or excessive distress").  It appears, however, that the differences between these forums' statutes of limitations are, as applied here, differences without distinction.  Under either statute, the claim for NIED is time-barred.

The plaintiffs premise this claim on Ranbaxy's knowledge, whether real or imputed, "that failure to exercise due care in the performance of the contract, the circumstances of the India assignment[,] the failure to fulfill the promises of full time employment[,] and the termination of plaintiff [sic] would cause . . . Naples severe emotional distress." (2d Am. Compl. at Fifteenth Count, ¶ 31.)  Ranbaxy terminated its relationship with the plaintiffs on March 31, 2006, and the plaintiffs brought the action against Ranbaxy approximately thirty-four months later, on February 4, 2009. (See 3-31-06 E-mail from Rebba to Shivaprakash; Am. Compl.)

The plaintiffs argue that the Court should apply New Jersey law, which provides the longer of the two potentially applicable statutes of limitations. (See Opp'n Br. at 47, 58-59.)  The plaintiffs also argue that the Court should deem that New Jersey's statute of limitations was tolled on March 18, 2008, when they originally brought the action in state court against only Infotech. (See id. at 58-59.)  They rely principally on Mitzner v. W. Ridgelawn Cemetery, Inc., 311 N.J. Super. 233, 239-40 (App. Div. 1998).

The plaintiffs' reliance on Mitzner is misplaced.  Mitzner, and cases like it, rest on New Jersey jurisprudence concerning "substantial compliance" with that state's statute of limitations. See, e.g., Berke v. Buckley Broad. Corp., 359 N.J. 587, 596-601 (App. Div. 2003) (discussing the history and detailing the evolution of New Jersey's substantial compliance).  The Berke court explained:

> Unswerving, "mechanistic" application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing these legislative purposes.  On numerous occasions we have found "such particular circumstances as to dictate not the harsh approach of literally applying the statute of limitations but the application of the more equitable and countervailing considerations of individual justice."

Id. (quoting Galligan v. Westfield Centre Serv., Inc., 82 N.J. 188, 192 (1980) (internal citations omitted)).  In each of the cases

50

discussed in <u>Berke</u> -- including <u>Mitzner</u> -- the plaintiff timely
filed the complaint against the defendant, but, for some reason,
originally brought the action before the wrong court.

The <u>Mitzner</u> plaintiff, for example, timely filed the complaint
against the defendants in New York, where the case was dismissed
for lack of personal jurisdiction.   <u>See</u> 311 N.J. Super. at 235.
The plaintiff then recommenced the action against the same
defendants in New Jersey.   <u>See id.</u>  Although the New Jersey filing
technically fell outside of the New Jersey statute of limitations,
the New Jersey appellate court deemed the complaint to be timely
filed pursuant to the doctrine of substantial compliance.   <u>See id.</u>
at 239-40.   That court explained:

> In the instant case, the timely filing in New York and
> the service of process were "'adequate to bring in the
> parties and to start the case on a course of judicial
> handling which . . . [could have] lead to final judgment
> without issuance of new initial process. . . .'"
> <u>Burnett[ v. N.Y. Cent. R.R. Co.</u>, 380 U.S. 424, 426
> (1965)] (citation omitted).   In such circumstances,
> . . . we perceive no reason for barring plaintiffs from
> pursuing their action in New Jersey.

<u>Id.</u> (brackets in original).

<u>Mitzner</u>, and cases like it, are thus factually distinct from
this action.   When the plaintiffs originally brought this action in
state court, it was not brought against Ranbaxy.   Accordingly,
nothing about the original pleading was "adequate to bring in"
Ranbaxy, which was not a party to the action.   The plaintiffs did

not commence the action in a manner that could have led to final judgment without issuance of new initial process until March 19, 2009, when process was served on Ranbaxy.  (See dkt. entry no. 28, Summons Returned Executed.)  That was more than one year after the commencement of the action.  For that reason, the statute of limitations was not tolled.

### 6.   The Claim for Fraud in the Inducement

The plaintiffs stated the claim for fraud in the inducement as follows:

> Plaintiff was induced to accept the contract and position for its personnel and subsequent assignment to India based on the promises of Ranbaxy, it agents, servants and/or employees, including but not limited to the promises of payment for work performed, timely payment for work performed, a permanent position and/or the opportunity for a permanent position with Ranbaxy and representations made to plaintiff, that if plaintiff's personnel would be assigned to India, they would be treated like Ranbaxy employees. Relying on the promises made by Ranbaxy, plaintiff accepted contract and the assignment to her detriment.

(See 2d Am. Compl. at Tenth Count, ¶ 22.)  The plaintiffs thus appear to allege that Ranbaxy, to induce the plaintiffs to execute the Software Services Agreement and related purchase orders, promised to: (1) provide timely compensation for Naples's services; and (2) give Naples either (a) a "permanent position" at Ranbaxy, or (b) the opportunity to secure full-time employment at Ranbaxy. (See id.)  They also appear to allege that Ranbaxy induced the

plaintiffs to accept the assignment at Ranbaxy Labs in Gurgaon by promising to treat Naples as similarly situated Ranbaxy employees were treated.  (Id.)

Ranbaxy has moved for summary judgment in its favor and against the plaintiffs on all aspects of this claim.  (See Br. in Supp. at 49-50 (similarly detailing the bases for the claim, as set forth in the Second Amended Complaint).)  However, the plaintiffs have abandoned the first and third aspects of this claim, as they have failed to offer any argument or evidence on it in opposition to the Ranbaxy Motion.  See Curtis v. Treloar, No. 96-1239, 1998 WL 1110448, at *9 (D.N.J. Aug. 27, 1998), aff'd, 189 F.3d 463 (3d Cir. 1999); see also Desayatnik v. Atl. Casting & Eng'g Corp., No. 03-5441, 2006 WL 120163, at *1-2 (D.N.J. Jan. 17, 2006).  The Court will thus analyze only the second and fourth aspects of the claim for fraud in the inducement.

### a.  The Alleged Promise to Give Naples a "Permanent" Position at Ranbaxy

Ranbaxy and the plaintiffs agree, with respect to Ranbaxy's alleged promise to give Naples a "permanent" position at Ranbaxy, that this aspect of the fraud in the inducement claim should be governed by New Jersey law.  (See Br. in Supp. at 52, 54-57; Opp'n Br. at 54-56.)  The Court will thus apply New Jersey law to this claim.  See Fed. Ins. Co., 639 F.3d at 566-67; Krumme, 238 F.3d at 138.

Under New Jersey law, a claim for fraud in the inducement seeking legal relief sounds in common-law fraud.  See Microbilt Corp. v. L2C, Inc., No. A-3141-09T3, 2011 WL 3667645, at *3 (N.J. App. Div. Aug. 23, 2011).[18]  The elements of common-law fraud are: "(1) a material misrepresentation" of fact; "(2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997); see also Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1182 (3d Cir. 1993) (demonstrating that plaintiffs seeking monetary damages must prove scienter); Luscko v. S. Container Corp., No. 06-3896, 2009 WL 5171868, at *4 (D.N.J. Dec. 23, 2009) (reciting elements of claim for fraud in the inducement under New Jersey law), aff'd, 408 Fed.Appx. 631 (3d Cir. 2010).

"A misrepresentation amounting to actual legal fraud" will generally consist "of a material representation of a presently existing or past fact".  Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 625 (1981).  Such a misrepresentation may also concern future events, if the plaintiff can demonstrate that

_____

[18] New Jersey courts also recognize fraud in the inducement as an equitable remedy that may serve as the basis for rescission of a contract.  See, e.g., Merchs. Indem. Corp. v. Eggleston, 37 N.J. 114, 130-31 (1962).  Here, however, the plaintiffs seek only legal relief, i.e., monetary damages.

54

those representations were made with the intent to deceive.  See
Luscko, 408 Fed.Appx. at 634; Notch View Assocs. v. Smith, 260
N.J. Super. 190, 202-03 (Law Div. 1992).  A plaintiff may show
the existence of such intent through circumstantial evidence,
such as the "utter recklessness and implausibility of the
statement in light of subsequent acts and events, a showing that
the promisor's intention to perform was dependent upon
contingencies only known to him, or evidence showing at the time
of the promise that the promisor could not or would not fulfill
the promise."  Luscko, 408 Fed.Appx. at 634-35.  But "[m]ere
nonperformance of a promise is insufficient to show that a
promisor had the requisite intent not to perform."  Id. (citing
Notch View Assocs., 260 N.J. Super. at 203); see also Alexander
v. CIGNA Corp., 991 F.Supp. 427, 436 (D.N.J.) ("[P]redictions of
the future, which were believed when made, cannot serve as a
basis for a fraud claim just because they subsequently turn out
not to be true."), aff'd, 172 F.3d 859 (3d Cir. 1998).

The Court has carefully considered the record, the law
relating to this aspect of the claim for fraud in the inducement,
and the standard of review applied to motions for summary judgment.
The Court now concludes that: (1) the plaintiffs have failed to
meet their burden of coming forward with evidence demonstrating, as
a matter of disputed, material fact, that Ranbaxy made material

misstatements regarding its intent to convert Naples from an
independent contractor to a full-time Ranbaxy employee; and (2) if
the plaintiffs had come forward with evidence of such material
misstatements, then the Court would nonetheless conclude that the
plaintiffs could not have reasonably relied on those misstatements.

Here, the record shows that Rebba and Walia, when interviewing
Naples for a position as an independent contractor, represented
that Ranbaxy was interested in hiring an independent contractor who
desired full-time employment at Ranbaxy.  They also represented
that Ranbaxy intended to convert that independent contractor to a
full-time Ranbaxy employee in approximately six months.  (See Tr.
of 10-27-08 Naples Dep. at 56-57, 59, 64-65; Tr. of 3-8-11 Naples
Dep. at 28, 30, 32, 34; Naples Aff. at ¶ 6; Walia Decl. at ¶ 5;
Rebba Decl. at ¶ 6.)  Rebba thereafter communicated with Naples
about the ongoing likelihood that Ranbaxy might later establish the
full-time position and offer that position to Naples.  (See Naples
Aff. at ¶¶ 17-19; Rebba Decl. at ¶ 11; Tr. of 3-8-11 Naples Dep.
at 127-28, 133.)  In addition, at least one person told Naples
that she would not be considered for the full-time position unless
she extended her stay in India and completed the assignment at
Ranbaxy Labs.  (See Naples Aff. at ¶ 64.)

Whether considered alone or in the aggregate, these statements
-- which merely concerned the possibility that Ranbaxy would offer

Naples full-time employment -- are not actionable, and this aspect
of the claim for fraud in the inducement is not viable.  As the
non-moving party, the plaintiffs had the burden of coming forward
with evidence that tends to show that each of these statements
constituted a material misstatement.  See Fed.R.Civ.P. 56(c)(1)(A)
(requiring non-moving party to produce at least some evidence to
support each material fact); Matsushita Elec. Indus., 475 U.S. at
586 (requiring the non-moving party to "do more than simply show
that there is some metaphysical doubt as to the material facts.").
They have failed to carry that burden.

Because each of the statements at issue concerns the chance
that Ranbaxy would take future action by offering Naples full-time
employment, the plaintiffs had the burden of proving that Ranbaxy
made those statements with the intent to deceive the plaintiffs.
See Luscko, 408 Fed.Appx. at 634-35; Notch View Assocs., 260
N.J. Super. at 202-03.  They have failed to carry this burden.
In their opposition brief, the plaintiffs state without citation
or meaningful explanation that Ranbaxy intended to deceive the
plaintiffs, to induce them to execute the Software Service
Agreement and subsequent Purchase Orders.  (See Opp'n Br. at
55-56.)  To the extent that the plaintiffs imply that intent may
be inferred from Ranbaxy's failure to create or offer Naples a
full-time position at Ranbaxy, that implication conflicts with

New Jersey law.  See Luscko, 408 Fed.Appx. at 634-35; Alexander,
991 F.Supp. at 436; Notch View Assocs., 260 N.J. Super. at 203.
And to the extent that the plaintiffs speculate that Ranbaxy
acted with the intent to deceive them, the Court notes that such
"speculation or conjecture does not create a material factual
dispute sufficient to defeat" the Ranbaxy Motion.  Robertson,
914 F.2d 382 n.12.  Accordingly, the Court will enter judgment
in Ranbaxy's favor and against the plaintiffs on this aspect of
the claim for fraud in the inducement.

> **b.** **The Alleged Promises Concerning Naples's Assignment in India, and the Related Living and Working Conditions**

The Court earlier noted that the plaintiffs abandoned certain
aspects of the claim for fraud in the inducement by failing to
provide related argument in opposition to the Ranbaxy Motion.  It
similarly appears that the plaintiffs have abandoned this aspect of
the claim.

The plaintiffs' sole reference to this aspect of the claim
appears in the following passage from their opposition brief:

> Additionally, representations were made about Naples'
> [sic] work and living conditions in India, which Ranbaxy
> knew to be false representations because Mazumdar [(a
> Ranbaxy Labs employee, who worked alongside Naples in
> Gurgaon)] told Naples that she was just treating the
> plaintiff how she was told in order to ensure that
> Naples would get the work done.  These representations,
> being false, were fraudulently made solely to induce

reliance upon them so that Naples would agree to go to India.

(Opp'n Br. at 55-56 (citations to record omitted).)  The plaintiffs have failed to detail: (1) what representations, if any, Ranbaxy made about the living and working conditions in India; (2) how those representations, if false, were false; and (3) that the plaintiffs reasonably relied on those representations.  But see Gennari, 148 N.J. at 610 (providing elements of a claim for common law fraud).

The Court will enter judgment on this aspect of the claim for fraud in the inducement.  The decision to enter such judgment rests on three alternative conclusions.  First, the Court deems the plaintiffs to have abandoned this aspect of the claim for fraud in the inducement.  The plaintiffs have not set forth a sufficient argument, such that the Court can meaningfully rule on the merits of that aspect of the claim.  See Curtis, 1998 WL 1110448, at *9.

Second, if the Court considered the merits of this aspect of the claim for fraud in the inducement, then the Court would conclude that the plaintiffs have "fail[ed] to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial".  Celotex, 477 U.S. at 323.  Under these circumstances, the Court would enter summary judgment in the movant's, i.e., Ranbaxy's

favor.  See id.; see also Fed.R.Civ.P. 56(e)(3); Kovalev, 362
Fed.Appx. at 331 (demonstrating that the non-moving party's
speculation and conjecture cannot defeat a motion for summary
judgment).

Third, it appears that this aspect of the claim for fraud
in the inducement is, in accordance with New Jersey's choice of
law rules, governed by the law of India.  See Kennedy, 2007 WL
135951, at *4 (citing Restatement (Second) Conflict of Laws § 148 cmt. j)
(recognizing that the law of the forum where a plaintiff acts in
reliance on a defendant's representations will usually apply); see
also Restatement (Second) Conflict of Laws § 148(2).  Because this aspect
of the claim is governed by the law of India, India's statute of
limitations applies.  See Cornett, 211 N.J. at 373-74.  That
statute provides only a three-year limitations period, and would
thus render this aspect of the claims for fraud in the inducement
time-barred.  See Limitation Act, at Schedule, First Div., Pt. X,
No. 113. (See Am. Compl. (filed on February 4, 2009, more than
three years after Naples returned from India).)

### 7.  The Claim for Negligent Misrepresentation

The plaintiffs' claim for negligent misrepresentation does not
inform the Court of the bases upon which the plaintiffs seek
relief.  In the Second Amended Complaint, the plaintiffs state:

> Plaintiff alleges and incorporates by reference as
> though fully set forth herein [all of the allegations

60

> against Ranbaxy]. . . .  Ranbaxy's actions consist of
> negligent misrepresentation.  Ranbaxy made untrue
> statements to the plaintiff [sic].  The plaintiff [sic]
> relied on said untrue statements and the plaintiff [sic]
> was damaged.

(2d Am. Compl. at Thirteenth Count, ¶ 1 and ¶ 29.)

Ranbaxy has interpreted this claim as resting on the same

facts and allegations as the claim for fraud in the inducement.

That interpretation rests on Naples's deposition testimony.  (See

Br. in Supp. at 57 ("Naples testified that her misrepresentation

claim arise[s] from essentially the same facts as the fraud claims

. . . .").)  The plaintiffs appear to agree with Ranbaxy's

interpretation; they state that

> . . . Ranbaxy made incorrect statements: that Naples
> would be made a permanent employee; that Naples was to
> go to India to gain experience on what she would be
> doing as a permanent employee; that Naples would be
> treated well while in India; that the permanent position
> had been created and approved.

(Opp'n Br. at 57.)  It appears, then, that there are two aspects to

the claim for negligent misrepresentation, i.e., aspects relating

to representations: (1) that Naples would be given a full-time

position as a Ranbaxy employee; and (2) that Naples would receive

certain living and working conditions while in India.

### a.   The Alleged Promise to Give Naples a "Permanent Position" at Ranbaxy

Ranbaxy and the plaintiffs appear to agree that this aspect of

the claim for negligent misrepresentation should be governed by New

Jersey law.  (See Br. in Supp. at 52, 54-57; Opp'n Br. at 54-56.)
The Court will thus apply New Jersey law to this aspect of the
claim for negligent misrepresentation.  See Fed. Ins. Co., 639 F.3d
at 566-67; Krumme, 238 F.3d at 138.

Negligent misrepresentation claims are quite similar to
common-law fraud claims.  Dayrit v. Mem'l Hosp. of Salem, No.
A-0232-10T4, 2012 WL 1987096, at *7 (N.J. App. Div. June 5, 2012).
Under New Jersey law, a plaintiff raising a claim for negligent
misrepresentation must demonstrate that: (1) the defendant
negligently made an incorrect statement; (2) the plaintiff
justifiably relied on that statement; and (3) the plaintiff, as a
consequence of that reliance, suffered damages.  Kaufman v. i-Stat
Corp., 165 N.J. 94, 109 (2000); see also Indian Brand Farms, Inc.
v. Novartis Crop Prot. Inc., 617 F.3d 207, 218 (3d Cir. 2010).

The Court has considered the arguments raised on this aspect
of the claim for negligent misrepresentation, and concludes that
it, like the parallel aspect of the claim for fraud in the
inducement, cannot survive the Ranbaxy Motion.  The plaintiffs have
failed to produce evidence showing that Ranbaxy's statements about
its intent to take future action -- i.e., its intent to perhaps
convert Naples from an independent contractor to a full-time
Ranbaxy employee -- were false.  As noted above, neither Ranbaxy's
decision not to convert Naples to a full-time employee nor the

plaintiffs' speculation and conjecture concerning Ranbaxy's motives are sufficient to defeat the Ranbaxy Motion.  See Robertson, 914 F.2d 382 n.12.  The Court will thus enter judgment in Ranbaxy's favor and against the plaintiffs on this aspect of the claim for negligent misrepresentation.

> **b.   The Alleged Promises Concerning Naples's Assignment in India, and the Related Living and Working Conditions**

Here, as with the claim for fraud in the inducement, the plaintiffs' argument is sparse.  They state:

> Defendants cannot claim that they were not aware of the representations made to the plaintiff regarding her treatment in India.  Representations were made about Naples' [sic] work and living conditions in India, which Ranbaxy knew to be false representations because Mazumdar told Naples that she was just treating the plaintiff how she was told in order to ensure that Naples would get the work done.

(Opp'n Br. at 57-58 (citations to record omitted).)  The plaintiffs have thus failed to detail: (1) what statements Ranbaxy made; and (2) how those statements, if false, were false.  But see Kaufman, 165 N.J. at 109 (providing elements of a claim for negligent misrepresentation).

The Court will thus enter judgment on this aspect of the claim for negligent misrepresentation.  The decision to enter such judgment rests on the same three conclusions provided above, with respect to that aspect of the claim for fraud in the

inducement that concerns the assignment in India.  First, the
Court deems the plaintiffs to have abandoned this aspect of the
claim for negligent misrepresentation.  See Curtis, 1998 WL
1110448, at *9.  Second, the Court concludes that the plaintiffs
have "fail[ed] to make a showing sufficient to establish the
existence of an element essential to [their] case, and on which
[they] will bear the burden of proof at trial".  Celotex, 477 U.S.
at 323.  Under these circumstances, the Court may enter summary
judgment in the movant's, i.e., Ranbaxy's favor.  See id.; see also
Fed.R.Civ.P. 56(e)(3); Kovalev, 362 Fed.Appx. at 331.  And third,
it appears that this aspect of the claim for negligent
misrepresentation is, in accordance with New Jersey's choice of
law rules, governed by the law of India, which would render it
time-barred.  See Limitation Act, at Schedule, First Div., Pt. X,
No. 113; Cornett, 211 N.J. at 373-74; Kennedy, 2007 WL 135951, at
*4; see also RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 148(2), 148 cmt. j.

64

**III. CONCLUSION**

The Court, for the reasons set forth in this Memorandum Opinion, will grant the Ranbaxy Motion, and enter judgment in Ranbaxy's favor and against the plaintiffs on all of the claims raised against Ranbaxy.  The Court will enter a separate Order and Judgment.

```
                          s/ Mary L. Cooper
                        MARY L. COOPER
                        United States District Judge
```

Date:    May 20, 2013